Luz M. SANTIAGO, Plaintiff, Appellant,

v.

**SECRETARY OF HEALTH
AND HUMAN SERVICES,**
Defendant, Appellee.

No. 90–1840.

United States Court of Appeals,
First Circuit.

Submitted Dec. 14, 1990.

Decided May 28, 1991.

Louis A. deMier–LeBlanc, on brief, for plaintiff, appellant.

Daniel F. Lopez Romo, U.S. Atty., Jose Vazquez Garcia, Asst. U.S. Atty., and Paul Germanotta, Asst. Regional Counsel, Dept. of Health and Human Services, on brief, for defendant, appellee.

Before CAMPBELL, SELYA and CYR, Circuit Judges.

PER CURIAM.

Luz M. Santiago appeals the denial of her application for social security disability

benefits. The district court adopted the report and recommendation of a magistrate and affirmed the denial. The administrative law judge (ALJ) made the ultimate conclusion that claimant Santiago could perform her past relevant work, 20 C.F.R. § 404.1520(e), and was not functionally disabled. In so deciding, the ALJ did not distinguish whether he found the claimant capable of performing a particular past job, or the occupation as it is generally performed nationally. *See* Social Security Ruling (SSR) 82–61. We conclude that the record substantially supports the conclusion that the claimant could still perform her former work as a sewing machine operator, and that she failed to carry the initial burden of showing how her alleged limitations of function affected the work demands of that job. For the reasons that follow, we affirm the decision of the district court.

## I

■■■ The ALJ found that the claimant was a younger individual, 44 years of age, in July 1983, when she stopped working due to her hip and back condition. A nervous condition ensued in March 1987 after her son died, and this application was filed the following month. The ALJ reviewed the claimant's treatment reports from three sources, and the reports of three physicians who performed consultative examinations for the Secretary, and concluded that while the *combination* of musculoskeletal and mental impairments was severe, (T. 209), there was no significant musculoskeletal dysfunction, (T. 207), and the mental impairment minimally affected her ability to work. (T. 208). According to the psychiatric technique review form completed by the ALJ, no more than slight functional loss resulted from claimant's nervous condition. (T. 200). These findings are well-supported by the medical records (which indicate mild osteoarthritis, degenerative changes in the spine, and a dysthymic disorder), the claimant's testimony, and other record statements. As to claimant's pain complaints, only mild osteoarthritic changes were disclosed prior to the expiration of insurance on December 31, 1987.

There was no evidence of muscle atrophy, conflicting evidence as to muscle spasm, and no neurological deficits were shown. Except for one passing reference to a November 1983 examination, (T. 103), there are no treatment records prior to August 1986 from any source. In light of the clinical medical findings and the claimant's statements regarding her activities, the ALJ reasonably concluded that the claimant's subjective physical and mental complaints were not credible to the extent alleged.

## II

The record evidence of the tasks required by claimant's former job is primarily contained in a disability report filed with the current application, and in claimant's testimony at the administrative hearing.

In the April 1987 disability report the claimant listed her former *usual* work as that of a sewing machine operator in a mattress factory. She described a day's basic duties as follows: "I would sit in front of a sewing machine and sew 8 hours a day." (T. 55) The job involved no walking or standing, and only occasional reaching and bending, presumably from the seated position. (T. 56). In response to the section on the form which asked her to describe any lifting and carrying activities, including what was lifted, how far it was carried, the heaviest weight lifted, and how frequently the weight was lifted or carried, the claimant stated: None. *Id.*

At the hearing on May 10, 1988, the claimant testified that she last worked in a jewelry factory in New Jersey. The job involved operating a machine to execute a particular jewelry-making task and was performed from a sitting position with only occasional bending and infrequent reaching. The objects handled were extremely light in weight. (T. 20–22). Prior to that, she worked in a state-side mattress factory for 7 years. Her job was to operate a sewing machine in order to quilt mattress fabric, and also to put on the borders or the binder, a simpler job. The work was performed from a sitting position, and in-

volved activating a pedal and using her arms to pull and turn the mattress material which was positioned on a rod. (T. 22–23); (T. 32–33). The claimant stated that even though she was sitting she "had to exert a lot of strength". (T. 23).

The ALJ further questioned the claimant:

Q. What happened to you in '83, that you stopped working? In 1983, what happened?

A. Certain inconsideratenesses and also I think I was accustomed to working out in the United States and the customs were different and I decided to stop, I went to work in the United States again.

Q. But my question is what made you stop working? That is, what did you feel in your body?

A. My head hurt a lot, as always my back has always hurt.

Q. Did you have an accident?

A. The nerves.

Q. Did you have an accident in which you injured your back?

A. Well, two things happened to me. First of all, I was going to open a door and the sudden air pushed the door wide open and the impact was felt in my arm, at that time I felt the pain in the middle of my back. And then later on, my brother had just come out of the army, a man came into his house, and we didn't know he was mentally ill, and my brother wanted to hit him. I tried holding my brother back, and we both fell down some steps. (T. 25).

When asked to describe how her condition kept her from working, the claimant stated: "I can't mop. I can't bend over. I can't lift heavy objects; no strenuous exercise. I can't climb ladders." (T. 51). In May 1987 she informed a consulting rheumatologist that her joint pains mostly affected her low back, left hip and left ankle, and that, functionally, lifting or carrying objects aggravated her back pains. (T. 172). In November 1987, upon application for reconsideration of the initial denial, the applicant described difficulty in walking, standing, lifting, and bending. (T. 61, 63). At the hearing she indicated that she could bend and pick something up from the floor "if it isn't very low." (T. 26).

The claimant testified that the treatment and medication taken for pain (due to arthritis) and nerves had improved her condition: "with the medications ... very little hurts, but at least I feel better with the medications." (T. 27). She could walk for one or two hours, but not without pain in her back and legs; she could maintain a sitting position for "at least 2 or 3 hours," (T. 30), without any stated difficulty. With respect to daily activities, the claimant testified that she tried to take care of the household chores, but relied upon her 73-year old husband for assistance. (T. 27–28).

The ALJ's decision noted that "[i]n the initial [April 1987] interview ... the claimant stated that she cooks, cleans and goes shopping. She gardens some, watches television, listens to the radio and reads. She also visits her relatives and is visited by them." (T. 205). The ALJ found, based upon claimant's own description, that her former job as a sewing machine operator was unskilled or semi-skilled, and light in nature. (T. 205). The ALJ found claimant's statements at the hearing that she performed heavy work as a sewing machine operator inconsistent with her description that she performed that job almost entirely from a sitting position. (T. 208). The ALJ concluded that the claimant retained the residual functional capacity (RFC) to perform light work.

■ The claimant's principal argument on appeal is that the ALJ, as a lay factfinder, is not qualified to make such an evaluation. Claimant contends that, as RFC is a medical assessment, 20 C.F.R. § 404.-1545(a), the ALJ was not permitted to determine RFC without having in the record an expert's RFC report. We reject this contention on these facts. The record here reflects only relatively mild mental and physical impairments and claimant never clarified the particular respects in which these are alleged to prevent her from performing her past work. In such circumstances the ALJ could determine she was

not disabled without requiring an expert's RFC evaluation as part of the record.

## III

At step 4 of the sequential evaluation process, 20 C.F.R. § 404.1520(e), a claimant will be found not disabled when he or she retains the RFC to perform "the actual functional demands and job duties of a particular past relevant job." Social Security Ruling (SSR) 82–61. Where the claimant can still perform the demands and duties of a former job as she actually performed it, a finding of non-disability is appropriate.[1] SSR 82–62 elaborates:

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and non-exertional demands of such work. Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of [first] the individual's statements as to *which* past work requirements can no longer be met *and the reason(s) for his or her inability to meet those requirements;* ... Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations.

*Id.* (CE 1982) at 161–62 (emphasis added).

 Although these requirements do not speak in terms of allocations of burdens of proof, they indicate that the claimant has the burden of making some reasonable threshold showing that she cannot return to her former employment because of her alleged disability. *Pitchard v. Schweiker,* 692 F.2d 198, 201 (1st Cir.1982); *Gonzalez Perez v. Secretary of Health, Education and Welfare,* 572 F.2d 886, 887 (1st Cir.1978). To do so, claimant must initially produce relevant evidence of the physical and mental demands of her prior work. *Pitchard v. Schweiker,* 692 F.2d at

201 & n. 2; *see also May v. Bowen,* 663 F.Supp. 388, 394 (D.Me.1987). That evidence may be testimonial or take the form of historical or subjective statements made in the application or other documents provided by the agency, *id.* at 393, but claimant must at least furnish some minimal information about the activities that her past usual work required, including those which can no longer be performed. *See Pelletier v. Secretary of Health, Education and Welfare,* 525 F.2d 158, 161 (1st Cir.1975). The claimant must then describe those impairments or limitations which she *says* she has, *see* 20 C.F.R. § 404.1512, so as to "raise the point to the Secretary", *id.* at 161, how current functional capacity, or, as here, capacity in the relevant period, precludes the performance of the particular prior job. If, assuming the existence of the limitations as she describes them, she nonetheless appears to still possess the ability to do that past work, she is obviously not disabled. In short, not only must the claimant lay the foundation as to what activities her former work entailed, but she must point out (unless obvious)—so as to put in issue—how her functional incapacity renders her unable to perform her former usual work.

 The ALJ is entitled to rely upon claimant's own description of the duties involved in her former job, *see, e.g., Jones v. Bowen,* 699 F.Supp. 693, 696 (N.D.Ill. 1988), as well as her own statements of her functional limitations. *See* 20 C.F.R. § 404.1545(a). The Secretary must ascertain the demands of the usual former work and *then* compare those demands with present mental and physical abilities. *May v. Bowen,* 663 F.Supp. at 393–94; 20 C.F.R. § 404.1520(e); *see also Veal v. Bowen,* 833 F.2d 693, 697 (7th Cir.1987); *Villa v. Heckler,* 797 F.2d 794, 798 (9th Cir.1986). As noted in *May,* however, an ALJ may not simply rely upon "the failure of the claim-

---

1. Alternatively, when the demands of the particular job which claimant performed in the past cannot be met, if the claimant has the capacity to meet the functional demands of that occupation as customarily required in the national economy, then a finding of non-disability also follows. SSRs 82–61; 82–62. This second prong of step four's disjunctive test is not at issue here. The ALJ made none of the findings of fact required by SSR 82–62 and which are a necessary predicate to such a disposition.

**6**

ant to *demonstrate* [that] the physical and mental demands of her past relevant work" can no longer be met, but, *"once alerted by the record to the presence of an issue"*, must develop the record further. *May v. Bowen*, 663 F.Supp. at 394. The problem here is that neither claimant's testimony nor the other evidence of record goes far enough to raise a meaningful issue as to her incapacity to perform her prior work.

## IV

■ The ALJ took into account all of the claimant's statements as to the exertional requirements of her past usual job, and implicitly found that she had failed to carry her initial burden to show that she stopped working "because of" her impairments. The record supports the conclusion that the claimant failed to present evidence showing the "practical consequences" of her conditions on the requirements of her prior work. *Gray v. Heckler*, 760 F.2d 369, 375 (1st Cir.1985); SSR 82–62.

First, while the claimant did indicate functional limitations on her performance of certain tasks (*i.e.*, lifting, carrying, walking, standing, bending (from the waist), climbing ladders, and squatting), she did not assert, and there is no evidence to show, how or to what degree, if any, these activities were important elements of her former work. Second, the claimant's own statements do not put into question her ability to push or pull, or suggest any difficulty in using the hands and arms in reaching, grasping, handling, fingering, feeling, or seeing, or suggest functional inability to move the upper body, head, neck, shoulders or extremities.

Claimant did testify that her hands went numb and hurt, (T. 26), due to pain, but she did not relate that condition to an inability to perform any work requirement, nor was the frequency or intensity indicated. Medication admittedly relieved her symptoms, and she stated that she could remain in a sitting position for a prolonged period of time. Inconsistent statements were made about the exertional requirements of her former job as she actually performed it. When questioned about production de-

mands, the claimant responded that there weren't any, "only that the job be done right." (T. 33). Nothing raised by the claimant indicates that her former work was stressful. *Cf. May v. Bowen*, 663 F.Supp. at 394 (claimant met both the initial burden, by asserting in disability form filed with application that previous jobs had all been "pressure jobs", as well as the burden of production, by presenting evidence of a medical condition for which stress was a risk). Finally, the ALJ permissibly found claimant's work as a sewing machine operator in a mattress factory to be light in nature. 20 C.F.R. § 404.1567(b) (Light work is alternatively described as that which involves "sitting most of the time with some pushing and pulling of arm or leg controls.")

In *Gray v. Heckler*, the ALJ relied on a vocational publication to establish the duties of one of claimant's relevant applicable past jobs. 760 F.2d at 371–72. We found that, while "it would have been preferable had the ALJ elicited such testimony ... it is the claimant, not the Secretary (or ALJ), who has the burden of proving inability to perform her former type of work. That burden necessarily includes an obligation to produce evidence on that issue." *Id.* Here, the ALJ did elicit testimony from the claimant describing the requirements of her former job as a sewing machine operator, which, along with other record statements, provided sufficient information concerning the functional demands of claimant's former usual work. As in *Jones v. Bowen*, 699 F.Supp. at 696, the claimant raised no issue as to her ability to perform the actual demands of her former job. Nothing in SSR 82–62 requires the ALJ to further develop the record as to issues *not* raised by the claimant's initial proffers.

■ Thus, while claimant's burden to describe her past work was minimally met, she failed to go on to show how her particular former work duties were compromised by her physical or mental condition. *See Gonzalez Perez v. Secretary of Health, Education and Welfare*, 572 F.2d at 888. The kind of foundation that the claimant

initially must lay requires no more than putting into issue functional loss that precludes performance of pertinent prior work activities. Once this threshold is crossed, the ALJ has the obligation to measure the requirements of former work against the claimant's capabilities; and, to make that measurement, an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person. Here, however, the claimant never crossed this threshold. She never identified the ways in which she believed her disabilities precluded her former work, nor is it otherwise apparent from the record how or why this was so. Thus the ALJ never reached the stage where it became necessary to translate medical terms and diagnoses into functional parameters—a process often necessitating expert guidance. Claimant having failed as to her initial burden, the ALJ could conclude that she possessed the ability to perform her prior work and was not, therefore, disabled.

As the conclusion that the claimant can perform her past relevant work is supported by substantial evidence, the judgment of the district court is *affirmed*.