July 7, 1993

[NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-2186

LUZ GONZALEZ MALDONADO,

Plaintiff, Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., U.S. District Judge]

Before

Torruella, Cyr and Stahl,
Circuit Judges.

Raymond Rivera Esteves and Juan A. Hernandez Rivera on brief for

appellant.
Daniel F. Lopez Romo, United States Attorney, Jose Vazquez

Garcia, Assistant United States Attorney, and Donna C. McCarthy,

Assistant Regional Counsel, Department of Health and Human Services,
on brief for appellee.

Per Curiam. Claimant, Luz Gonzalez Maldonado,

applied for social security insurance benefits on March 8,

1989, alleging that problems with her "back, nerves, and

hands" had disabled her from working since September 20,

1980. Claimant was thirty-four years of age on the alleged

onset date. Her disability insurance coverage ended on March

31, 1985, some four years prior to this application.

Initially, the agency determined that, as of that date,

claimant's mental condition prevented her return to her prior

work as an electronics welder because it required good

concentration, but that, otherwise, she retained physical and

mental abilities to perform other work. Upon

reconsideration, the no-disability finding was affirmed.

After a hearing, an Administrative Law Judge

("ALJ") concluded that, as of the time she was last insured

for disability purposes, claimant could still perform her

past job as a solderer of television tubes. Upon judicial

review, a magistrate judge surveyed the evidence and, in a

comprehensive report,1 recommended affirming the ALJ's

decision. The district court agreed, and claimant took this

appeal. We conclude that the ALJ's finding that claimant's

mental condition was not severe and did not impose any

limitation of function on or before March 31, 1985, is not

supported by substantial evidence, and vacate and remand for

further proceedings.

1. We have reviewed all the evidence and, in light of the
magistrate-judge's recapitulation, do not recount it here.

I.

Our focus is on step four of the Secretary's

sequential evaluation process. 20 C.F.R. 404.1520(e). At

this stage, the initial burden is on the claimant to show

that she can no longer perform her particular former work

because of her impairments. Santiago v. Secretary of HHS,

944 F.2d 1, 5 (1st Cir. 1991). Then, the ALJ must compare

the physical and mental demands of that past work with

current functional capability or, as here, functional ability

in the critical period. Id. In making a step four

appraisal, the ALJ is entitled to credit claimant's own

description of her former job duties and functional

limitations, id., but, as Santiago cautions:

[A]n ALJ may not simply rely upon the
failure of the claimant to demonstrate

that the physical and mental demands of
her past relevant work can no longer be
met, but once alerted by the record to

the presence of such an issue, must

develop the record further.

Id. at 5-6 (quotation marks and citations omitted). There is

substantial evidence that claimant met her initial burden to

provide information about the activities her usual work

required and her functional inability to perform that work.

There is also uncontradicted evidence, which the ALJ did not

address or explain, that the claimant's mental functioning in

the critical period was, overall, moderately limited as a

result of her mental condition. Because this evidence,

-3-

together with claimant's statements, squarely put into issue

whether claimant's mental condition prevented her from

performing a particular job as she had performed it in the

past, the ALJ was not, as the following discussion indicates,

free to ignore it.

II.

We begin by noting that claimant does not challenge

the ALJ's determination as to her physical impairment (severe

cervical and lumbar myositis) or physical residual functional

capacity ("RFC") (light exertion) in the critical period. In

deciding that claimant could then still perform light work,

the ALJ gave some credence to claimant's pain complaints, a

conclusion that is reasonably supported in the record.

A.

With respect to claimant's allegations that the

mental condition she developed after she stopped working

prevented her return to that work, the ALJ stated:

The claimant has been followed during the
crucial period for an emotional
component. However, the medical evidence
so far considered does not show the
presence of any severe emotional
impairment. The claimant's capacity to
perform basic work related activities was
not affected at all by her alleged
emotional component. There is no
evidence of severe intellectual
dysfunction, personality deterioration,
perceptual distortions, reality
detachment, deterioration of personal
habits, significant constriction of
interest, marked restriction in daily
activities, inadequate judgment or

-4-

insight, or inability to deal with the
physical or social environment. The
claimant's emotional impairment during
the crucial period was a slight
abnormality with such a minimal effect on
her that it would not be expected to
interfere with her ability to work
irrespective of age, education or work
experience.

The ALJ decided that the evidence showed a diagnosis of a

generalized anxiety disorder, but that (1) there was "no

evidence in file to support allegations of a significant

emotional illness," and (2) claimant's mental "condition did

not impose any limitation in claimant's capacity to perform

basic work-related activities on or before March 31, 1985."

In an accompanying psychiatric review technique form

("PRTF"), the ALJ rated claimant's mental impairment as non-

severe.

At the request of the disability determination

program, two non-examining psychological consultants

completed PRTFs and mental RFC assessments for the insured

period. Both consultants, Drs. McDougall and Gonzalez, rated

claimant's mental impairment as severe on the PRTF. 20

C.F.R. 404.1520(c)(1). Each consultant specifically

indicated on the accompanying mental RFC form that their

evaluation was for the "date last insured," i.e., March 1985.

The Secretary argues, however, that Dr. McDougall's 1989 PRTF

and RFC were "current" assessments and do not reflect

impairment or functioning in the insured period.

-5-

This is clearly incorrect as to Dr. McDougall's RFC

assessment which was expressly limited to the critical

period. The Secretary's own regulations for evaluating

mental impairment claims mandate the completion of a RFC

assessment if a severe mental impairment is indicated on the

PRTF. 20 C.F.R. 404.1520a(c)(3). Although the timeframe

of Dr. McDougall's PRTF was (apparently inadvertently)

omitted, the completion of a mental RFC assessment is

predicated upon a PRTF finding that a severe mental

impairment exists. Dr. McDougall, like Dr. Gonzalez, made

that predicate finding on the PRTF by checking the

disposition: "RFC necessary (i.e., a severe impairment is

present . . .)". Thus, Dr. McDougall's concomitant RFC

(clearly completed for the insured period) must cover the

same timeframe as Dr. McDougall's initial PRTF. In addition,

both consultants were specifically requested to provide a

severity assessment for the period ending March 31, 1985.

We reach this conclusion, despite two terse,

seemingly inconsistent remarks by Dr. McDougall: (1) "No

evidence to support severe condition by QC [quarters of

coverage] 3/85," and (2) "No evidence of a severe mental

condition for the years 83-85." These anomalous comments

aside, the special procedures inherent in 404.1520a

together with the information and subsidiary findings

recorded within the PRTF itself dictate that Dr. McDougall

-6-

determined that a severe mental impairment existed in the

critical period before going on to complete a RFC assessment.

Put another way, under 404.1520a, Dr. McDougall could not

have completed such an assessment for the period ending March

1985 solely upon a finding of mental severity in 1989. Thus,

since there are no contrary medical reports as to the

severity of claimant's mental impairment, the ALJ's finding

that there was no evidence to support allegations of a

significant emotional illness in the relevant period is not

supported by substantial evidence.

B.

We turn to the evidence of claimant's mental

functioning in the critical period. Dr. McDougall saw

claimant as predominantly anxious with depressive traits,

whereas Dr. Gonzalez found a mood disorder characterized by

depression. Nonetheless, in evaluating the twenty mental

activities related to the ability to sustain essential work

activities on a regular basis, both consultants found the

claimant's functioning moderately limited in eleven of the

twenty abilities. Both agreed that eight areas of mental

functioning were moderately compromised, specifically, the

abilities to: maintain attention and concentration for

extended periods; perform activities within a schedule; work

in coordination with or proximity to others; complete a

normal workday and workweek and perform at a consistent pace;

-7-

interact appropriately with the general public; respond

appropriately to changes in the work setting; be aware of

normal hazards; and travel in unfamiliar places or use public

transportation. As this evidence is uncontroverted, we do

not find record support for the ALJ's finding that claimant's

mental condition imposed no limitation on her ability to

perform basic work activities in the relevant period.

C.

Based upon vocational information and testimony

provided by the claimant, the ALJ decided:

[S]he has worked as a solderer and
machine operator in a factory. The
claimant's past relevant work can be
considered as low semiskilled in nature.
He[r] work as [a] soldering power machine
and machine operator entailed medium
exertion. However, the activity she
performed . . . soldering TV set (tubes)
is considered of slight nature and was
performed alternating positions. We are
convinced that the claimant was still
capable of performing her past relevant
work . . . soldering TV [parts] as she
still had a residual functional capacity
for light work.

The claimant described her job using a power machine to

solder electronic parts:

I united parts by means of soldering a
tin wire which served as a fixer. We
used a pedal machine which . . . served
to heat the part being worked to `red
hot.' The tin wire was then placed to
serve as the soldering medium. Then, the
part would be cooled off in . . . trays
full of cold water. This procedure was
performed daily.

-8-

According to claimant, the job welding television tubes was

similar:

The parts were smaller and the machine
used was more modern. The soldering was
done with the very same machine.

From these descriptions (the opinion of a vocational expert

was not obtained), it seems fairly obvious that claimant's

former job soldering television parts required an ability to

concentrate and remain focused on the machinery used and the

tasks at hand. Here, where the uncontroverted reports of the

only two medical consultants to render an opinion as to

mental functioning in the insured period found claimant's

ability for sustained attention and concentration moderately

limited, the ALJ's conclusion that claimant could perform the

physical and mental demands of her past work was not

supported by substantial evidence.2 See Higgarty v.

Sullivan, 947 F.2d 990, 996-97 (1st Cir. 1991).

III.

Because the ALJ did not address or otherwise

explain whether claimant's mental functioning significantly

affected her ability to perform particular past work, or that

occupation as it is generally performed, see Social Security

Ruling 82-61; Santiago, 944 F.2d at 5 n.1, the case is

2. Claimant's initial and reconsideration denials, each of
which concluded that claimant could not perform her former
work, are also entitled to some evidentiary weight. 20
C.F.R. 404.1512(b)(5); see also Kirby v. Sullivan, 923 F.2d

1323, 1327 (8th Cir. 1991).

-9-

remanded for further proceedings in accordance with this

opinion. We may not, despite the invitation of the

Secretary, conclude that claimant was unable to perform her

past relevant work during the period in question, and apply

the medical-vocational guidelines, 20 C.F.R. Part 404,

Subpart P, App. 2, to find the claimant disabled. See

Securities & Exchange Comm. v. Chenery Corp., 318 U.S. 80,

93-95 (1943). We have considered claimant's other arguments

and find them without merit for the reasons stated in the

report of the magistrate-judge.

The judgment of the district court is vacated and

the case is remanded with directions to remand to the

Secretary for further proceedings.

-10-