996 F.2d 1209
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Luz Gonzalez MALDONADO, Plaintiff, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 No. 92-2186.
 United States Court of Appeals,
First Circuit.
 July 7, 1993
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO
 Raymond Rivera Esteves and Juan A. Hernandez Rivera on brief for appellant.
 Daniel F. Lopez Romo, United States Attorney, Jose Vazquez Garcia, Assistant United States Attorney, and Donna C. McCarthy, Assistant Regional Counsel, Department of Health and Human Services, on brief for appellee.
 D.Puerto Rico.
 VACATED AND REMANDED.
 Before Torruella, Cyr and Stahl, Circuit Judges.
 Per Curiam.
 
 
 1
 Claimant, Luz Gonzalez Maldonado, applied for social security insurance benefits on March 8, 1989, alleging that problems with her "back, nerves, and hands" had disabled her from working since September 20, 1980. Claimant was thirty-four years of age on the alleged onset date. Her disability insurance coverage ended on March 31, 1985, some four years prior to this application. Initially, the agency determined that, as of that date, claimant's mental condition prevented her return to her prior work as an electronics welder because it required good concentration, but that, otherwise, she retained physical and mental abilities to perform other work. Upon reconsideration, the no-disability finding was affirmed.
 
 
 2
 After a hearing, an Administrative Law Judge ("ALJ") concluded that, as of the time she was last insured for disability purposes, claimant could still perform her past job as a solderer of television tubes. Upon judicial review, a magistrate judge surveyed the evidence and, in a comprehensive report,[1] recommended affirming the ALJ's decision. The district court agreed, and claimant took this appeal. We conclude that the ALJ's finding that claimant's mental condition was not severe and did not impose any limitation of function on or before March 31, 1985, is not supported by substantial evidence, and vacate and remand for further proceedings.
 
 I.
 
 3
 Our focus is on step four of the Secretary's sequential evaluation process. 20 C.F.R. § 404.1520(e). At this stage, the initial burden is on the claimant to show that she can no longer perform her particular former work because of her impairments. Santiago v. Secretary of HHS, 944 F.2d 1, 5 (1st Cir. 1991). Then, the ALJ must compare the physical and mental demands of that past work with current functional capability or, as here, functional ability in the critical period. Id. In making a step four appraisal, the ALJ is entitled to credit claimant's own description of her former job duties and functional limitations, id., but, as Santiago cautions:
 
 
 4
 [A]n ALJ may not simply rely upon the failure of the claimant to demonstrate that the physical and mental demands of her past relevant work can no longer be met, but once alerted by the record to the presence of such an issue, must develop the record further.
 
 
 5
 Id. at 5-6 (quotation marks and citations omitted). There is substantial evidence that claimant met her initial burden to provide information about the activities her usual work required and her functional inability to perform that work. There is also uncontradicted evidence, which the ALJ did not address or explain, that the claimant's mental functioning in the critical period was, overall, moderately limited as a result of her mental condition. Because this evidence, together with claimant's statements, squarely put into issue whether claimant's mental condition prevented her from performing a particular job as she had performed it in the past, the ALJ was not, as the following discussion indicates, free to ignore it.
 
 II.
 
 6
 We begin by noting that claimant does not challenge the ALJ's determination as to her physical impairment (severe cervical and lumbar myositis) or physical residual functional capacity ("RFC") (light exertion) in the critical period. In deciding that claimant could then still perform light work, the ALJ gave some credence to claimant's pain complaints, a conclusion that is reasonably supported in the record.
 
 A.
 
 7
 With respect to claimant's allegations that the mental condition she developed after she stopped working prevented her return to that work, the ALJ stated:
 
 
 8
 The claimant has been followed during the crucial period for an emotional component. However, the medical evidence so far considered does not show the presence of any severe emotional impairment. The claimant's capacity to perform basic work related activities was not affected at all by her alleged emotional component. There is no evidence of severe intellectual dysfunction, personality deterioration, perceptual distortions, reality detachment, deterioration of personal habits, significant constriction of interest, marked restriction in daily activities, inadequate judgment or insight, or inability to deal with the physical or social environment. The claimant's emotional impairment during the crucial period was a slight abnormality with such a minimal effect on her that it would not be expected to interfere with her ability to work irrespective of age, education or work experience.
 
 
 9
 The ALJ decided that the evidence showed a diagnosis of a generalized anxiety disorder, but that (1) there was "no evidence in file to support allegations of a significant emotional illness," and (2) claimant's mental "condition did not impose any limitation in claimant's capacity to perform basic work-related activities on or before March 31, 1985." In an accompanying psychiatric review technique form ("PRTF"), the ALJ rated claimant's mental impairment as non-severe.
 
 
 10
 At the request of the disability determination program, two non-examining psychological consultants completed PRTFs and mental RFC assessments for the insured period. Both consultants, Drs. McDougall and Gonzalez, rated claimant's mental impairment as severe on the PRTF. 20 C.F.R. § 404.1520(c)(1). Each consultant specifically indicated on the accompanying mental RFC form that their evaluation was for the "date last insured," i.e., March 1985. The Secretary argues, however, that Dr. McDougall's 1989 PRTF and RFC were "current" assessments and do not reflect impairment or functioning in the insured period.
 
 
 11
 This is clearly incorrect as to Dr. McDougall's RFC assessment which was expressly limited to the critical period. The Secretary's own regulations for evaluating mental impairment claims mandate the completion of a RFC assessment if a severe mental impairment is indicated on the PRTF. 20 C.F.R. § 404.1520a(c)(3). Although the timeframe of Dr. McDougall's PRTF was (apparently inadvertently) omitted, the completion of a mental RFC assessment is predicated upon a PRTF finding that a severe mental impairment exists. Dr. McDougall, like Dr. Gonzalez, made that predicate finding on the PRTF by checking the disposition: "RFC necessary (i.e., a severe impairment is present ... )". Thus, Dr. McDougall's concomitant RFC (clearly completed for the insured period) must cover the same timeframe as Dr. McDougall's initial PRTF. In addition, both consultants were specifically requested to provide a severity assessment for the period ending March 31, 1985.
 
 
 12
 We reach this conclusion, despite two terse, seemingly inconsistent remarks by Dr. McDougall: (1) "No evidence to support severe condition by QC [quarters of coverage] 3/85," and (2) "No evidence of a severe mental condition for the years 83-85." These anomalous comments aside, the special procedures inherent in § 404.1520a together with the information and subsidiary findings recorded within the PRTF itself dictate that Dr. McDougall determined that a severe mental impairment existed in the critical period before going on to complete a RFC assessment. Put another way, under § 404.1520a, Dr. McDougall could not have completed such an assessment for the period ending March 1985 solely upon a finding of mental severity in 1989. Thus, since there are no contrary medical reports as to the severity of claimant's mental impairment, the ALJ's finding that there was no evidence to support allegations of a significant emotional illness in the relevant period is not supported by substantial evidence.
 
 B.
 
 13
 We turn to the evidence of claimant's mental functioning in the critical period. Dr. McDougall saw claimant as predominantly anxious with depressive traits, whereas Dr. Gonzalez found a mood disorder characterized by depression. Nonetheless, in evaluating the twenty mental activities related to the ability to sustain essential work activities on a regular basis, both consultants found the claimant's functioning moderately limited in eleven of the twenty abilities. Both agreed that eight areas of mental functioning were moderately compromised, specifically, the abilities to: maintain attention and concentration for extended periods; perform activities within a schedule; work in coordination with or proximity to others; complete a normal workday and workweek and perform at a consistent pace; interact appropriately with the general public; respond appropriately to changes in the work setting; be aware of normal hazards; and travel in unfamiliar places or use public transportation. As this evidence is uncontroverted, we do not find record support for the ALJ's finding that claimant's mental condition imposed no limitation on her ability to perform basic work activities in the relevant period.
 
 C.
 
 14
 Based upon vocational information and testimony provided by the claimant, the ALJ decided:
 
 
 15
 [S]he has worked as a solderer and machine operator in a factory. The claimant's past relevant work can be considered as low semiskilled in nature. He[r] work as [a] soldering power machine and machine operator entailed medium exertion. However, the activity she performed ... soldering TV set (tubes) is considered of slight nature and was performed alternating positions. We are convinced that the claimant was still capable of performing her past relevant work ... soldering TV [parts] as she still had a residual functional capacity for light work.
 
 
 16
 The claimant described her job using a power machine to solder electronic parts:
 
 
 17
 I united parts by means of soldering a tin wire which served as a fixer. We used a pedal machine which ... served to heat the part being worked to 'red hot.' The tin wire was then placed to serve as the soldering medium. Then, the part would be cooled off in ... trays full of cold water. This procedure was performed daily.
 
 
 18
 According to claimant, the job welding television tubes was similar:
 
 
 19
 The parts were smaller and the machine used was more modern. The soldering was done with the very same machine.
 
 
 20
 From these descriptions (the opinion of a vocational expert was not obtained), it seems fairly obvious that claimant's former job soldering television parts required an ability to concentrate and remain focused on the machinery used and the tasks at hand. Here, where the uncontroverted reports of the only two medical consultants to render an opinion as to mental functioning in the insured period found claimant's ability for sustained attention and concentration moderately limited, the ALJ's conclusion that claimant could perform the physical and mental demands of her past work was not supported by substantial evidence.[2] See Higgarty v. Sullivan, 947 F.2d 990, 996-97 (1st Cir. 1991).
 
 III.
 
 21
 Because the ALJ did not address or otherwise explain whether claimant's mental functioning significantly affected her ability to perform particular past work, or that occupation as it is generally performed, see Social Security Ruling 82-61; Santiago, 944 F.2d at 5 n.1, the case is remanded for further proceedings in accordance with this opinion. We may not, despite the invitation of the Secretary, conclude that claimant was unable to perform her past relevant work during the period in question, and apply the medical-vocational guidelines, 20 C.F.R. Part 404, Subpart P, App. 2, to find the claimant disabled. See Securities & Exchange Comm. v. Chenery Corp., 318 U.S. 80, 93-95 (1943). We have considered claimant's other arguments and find them without merit for the reasons stated in the report of the magistrate-judge.
 
 
 22
 The judgment of the district court is vacated and the case is remanded with directions to remand to the Secretary for further proceedings.
 
 
 
 [1]
 We have reviewed all the evidence and, in light of the magistrate-judge's recapitulation, do not recount it here
 
 
 [2]
 Claimant's initial and reconsideration denials, each of which concluded that claimant could not perform her former work, are also entitled to some evidentiary weight. 20 C.F.R. § 404.1512(b)(5); see also Kirby v. Sullivan, 923 F.2d 1323, 1327 (8th Cir. 1991)