UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

 

No. 95-1241 

 VICTORIA MANSO-PIZARRO,

 Plaintiff, Appellant,

 v.

 SECRETARY OF HEALTH AND HUMAN SERVICES,

 Defendant, Appellee.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Salvador E. Casellas, U.S. District Judge] 

 

 Before

 Torruella, Chief Judge, 
 Selya and Lynch, Circuit Judges. 

 

Raymond Rivera Esteves and Juan A. Hernandez Rivera on brief for 
appellant.
Guillermo Gil, United States Attorney, Maria Hortensia Rios- 
Gandara, Assistant United States Attorney, and Donna C. McCarthy, 
Assistant Regional Counsel, Department of Health and Human Services,
on brief for appellee.

 

 February 8, 1996
 

 Per Curiam. Claimant Victoria Manso-Pizarro was 

fifty-eight years old when she applied for social security

insurance benefits on September 5, 1991. She alleged that a

heart condition, high blood pressure and bad circulation had

disabled her from working since June 24, 1991. After a

hearing, an Administrative Law Judge (ALJ) concluded that

claimant suffered from hypertension, obesity, and mild

anxiety, but that she could still perform her last previous

job. Upon judicial review, a magistrate judge recommended

affirming the ALJ's decision. The district court agreed.

The claimant appeals. We vacate and remand for further

proceedings.

 I. 

 We must uphold a denial of social security

disability benefits unless "the Secretary has committed a

legal or factual error in evaluating a particular claim."

Sullivan v. Hudson, 490 U.S. 877, 885 (1989). The 

Secretary's findings of fact are conclusive if supported by

substantial evidence. See 42 U.S.C. 405(g); see also 

Richardson v. Perales, 402 U.S. 389, 401 (1971). 

 There is substantial record evidence that claimant

met her initial burden to provide enough information about

the activities her usual work required and how those

activities were compromised by her functional inability to

perform that work. Claimant has a twelfth-grade education

and worked for twenty-two years as a kitchen helper in a

public school cafeteria. Her duties included serving

children, preparing milk, washing dishes and trays, helping

the cook, and cleaning the floor. The job required her to

stand or walk for six hours a day, to sit for one-half hour,

and to lift and carry up to thirty pounds (including, on

occasion, lifting and carrying large, hot cooking pots). She

described her work as fairly heavy and stated that she could

no longer perform it because: she lacked the strength to

lift anything heavy; she had limited ability to lift and

carry because her hands cramped due to bad circulation; she

had blurry vision and became dizzy when bending; and she

could not stand for very long due to pain on her left side

and in her feet. Upon this foundation, the ALJ supportably

concluded that claimant's past relevant work involved medium

physical exertion, and required her alternately to walk or

stand for six hours, to lift or carry up to thirty pounds.

 This finding implicated step four of the

Secretary's sequential evaluation process. See 20 C.F.R.  

404.1520(e). At step four the initial burden is on the

claimant to show that she can no longer perform her former

work because of her impairments. See Santiago v. Secretary 

of HHS, 944 F.2d 1, 5 (1st Cir. 1991). At that point, the 

ALJ must compare the physical and mental demands of that past

work with current functional capability. See id.; see also 

 -3-

20 C.F.R. 404.1560(b). In making a step four appraisal,

the ALJ is entitled to credit a claimant's own description of

her former job duties and functional limitations, see id., 

but has some burden independently to develop the record. See 

id. at 5-6. 

 In this instance, the ALJ decided that claimant

retained the residual functional capacity (RFC) to perform

her past relevant work as a cook's helper. In comparing

claimant's retained capacities with the mental and physical

demands of her prior work, the ALJ concluded that because the

record indicated no physical restrictions limiting her

ability to alternately walk or stand for six hours, or to

lift up to thirty pounds, claimant's RFC coincided with her

past relevant work activities.1 The claimant argues that in 1

making this RFC assessment, the ALJ impermissibly interpreted

raw medical evidence, and instead should have obtained an RFC

assessment by a physician. The Secretary disagrees. She

contends that the non-severity of claimant's impairments

entitled the ALJ to make a commonsense RFC assessment and

that the ALJ, in finding that claimant retained the RFC to

perform medium-level exertion, did not overstep the bounds of

lay competence.

  

 1The ALJ deemed it "advisable" to limit the claimant to a 1
medium work level of exertion. See generally 20 C.F.R.  
404.1567(c) (medium work involves lifting no more than 50
pounds at a time with frequent carrying or lifting of objects
weighing up to 25 pounds).

 -4-

 II. 

 With a few exceptions (not relevant here), an ALJ,

as a lay person, is not qualified to interpret raw data in a

medical record. See Perez v. Secretary of HHS, 958 F.2d 445, 

446 (1st Cir. 1991); Gordils v. Secretary of HHS, 921 F.2d 

327, 329 (1st Cir. 1990). Of course, where the medical

evidence shows relatively little physical impairment, an ALJ

permissibly can render a commonsense judgment about

functional capacity even without a physician's assessment.

See, e.g., id. But when, as now, a claimant has sufficiently 

put her functional inability to perform her prior work in

issue, the ALJ must measure the claimant's capabilities, and

 to make that measurement, an expert's RFC
 evaluation is ordinarily essential unless
 the extent of functional loss, and its
 effect on job performance, would be
 apparent even to a lay person.

Santiago, 944 F.2d at 7. 

 Here, the record contains no analysis of functional

capacity by a physician or other expert. Thus, the question

whether substantial evidence supports the ALJ's finding that

claimant retains the functional capacity to do medium-level

work and otherwise perform her prior vocational activities

depends on a qualitative assessment of the medical evidence

that was before the ALJ. If that evidence suggests a

relatively mild physical impairment posing, to the

layperson's eye, no significant exertional restrictions, then

 -5-

we must uphold the ALJ's finding; elsewise, we cannot (in the

absence of an expert's opinion). See Perez, 958 F.2d at 446- 

47; Gordils, 921 F.2d at 329. It is to that perscrutation 

that we now turn.

 III. 

 On June 27, 1991, three days after she stopped

working, claimant saw Dr. Ruiz for chest pain, dizziness and

palpitations. Dr. Ruiz diagnosed her as having high blood

pressure and premature ventricular contractions.2 Although 2

he prescribed medication, the claimant's condition worsened

and he hospitalized her on July 6. She was placed in the

intensive care unit. Tests showed ventricular tachycardia

(an abnormally rapid ventricular rhythm, most commonly

associated with atrioventricular dissociation, see Dorland's, 

supra, at 1655), frequent PVCs, premature arterial 

contractions, and some evidence of paroxysmal atrial

tachycardia (a condition marked by sudden onset and cessation

of rapid cardiac rate in the atrial locus, Dorland's, supra, 

at 655).3 The principal diagnosis was ventricular 3

tachycardia. Coexisting admission diagnoses included

premature ventricular beats, hyperthyroidism, excess calcium

  

 2Premature ventricular contractions (PVCs) are "often 2
indicative of organic heart disease." Dorland's Illustrated 
Medical Dictionary 363 (28th ed. 1994). 

 3Several other entries in the record are illegible. 3

 -6-

and uric acid in the blood, moderate dehydration, and two

other illegible conditions.

 During the claimant's twelve-day hospital stay,

seven electrocardiograms combined conclusively to show sinus

tachycardia. Two chest x-rays revealed an enlarged heart.

No fewer than five physicians were asked to consult.4 A 4

July 8 consultation report related a diagnostic impression of

sinusal tachycardia and a history of arterial hypertension.

 The discharge summary is mostly unreadable. It

indicates, however, that the claimant's laboratory, chemical

profile, and radiology tests were not within normal limits.

The prognosis was described as "fair." Claimant was released

on a regime of medication and extremely limited physical

activity.

 Dr. Ruiz saw the claimant as an out-patient in July

and August, and again in January of 1992. At the August

visit, he found her chest pain to be precipitated by

hyperthyroidism with supraventricular tachycardia and

occasional episodes of ventricular tachycardia. He diagnosed

her as suffering from hyperthyroidism with associated

hypertensive cardiovascular disease, ventricular and atrial

tachycardia, and PVCs. He noted other adverse conditions,

  

 4Four of the consulting physicians' reports (Dr. Gonzalez 4
-July 7; Dr. Guerra - July 8; Dr. Rodriguez - July 10; and
Dr. [illegible] - July 11) are, like many other record
entries, inscrutable not because of copy quality but because
the handwriting is not intelligible.

 -7-

but they are unreadable. During that same month, the

claimant was also evaluated at the State Insurance Fund.

Tests showed cardiomegaly, an elongated aorta with a

calcified knob, and multifocal PVCs.

 On November 26, 1991, the claimant was seen by Dr.

Medina-Ruiz, the Secretary's consulting cardiologist. At

that point, the claimant's chief complaints were fatigue,

lack of energy, cramping of the legs, palpitations and

numbness. The physical examination and associated tests

revealed many of the same heart-related problems. Dr.

Medina-Ruiz's diagnostic impression included a finding of

hypertensive cardiovascular disease.

 On June 13, 1992, the claimant was hospitalized for

three days due to high blood pressure, headaches and blurred

vision. The diagnosis was hypertensive crisis and renal

insufficiency. She improved with medication and was

discharged with a one-week restriction of activities. 

 IV. 

 Putting aside the many unreadable entries in the

medical evidence,5 those reports otherwise unambiguously 5

indicate the existence of medical conditions and

symptomatology that do not appear, at least without further

  

 5In this case, the unreadable entries may have some 5
import. We think that it is the duty of the ALJ, on remand,
to make some effort to decipher them.

 -8-

evaluation by an expert, to be so mild as to make it obvious

to a layperson that the claimant's ability to perform her

particular past work as a cook's helper was unaffected. The

Secretary acknowledges that the record shows cardiac

abnormalities and other serious conditions. Even if we were

to conclude that substantial evidence documented no more than

mild physical impairments with relatively insignificant

exertional loss, the record here is sufficiently ramified

that understanding it requires more than a layperson's effort

at a commonsense functional capacity assessment. See 

Gordils, 921 F.2d at 329 (limiting ALJ's assessment of 

claimant's functional capacity to sedentary work activities

only). To sum up, given the illegibility of non-trivial

parts of the medical reports, coupled with identifiable

diagnoses and symptoms that seem to indicate more than mild

impairment, we believe that the record alerted the ALJ to the

need for expert guidance regarding the extent of the

claimant's residual functional capacity to perform her

particular past employment. See Perez, 958 F.2d at 447; 

Santiago, 944 F.2d at 4; Gordils, 921 F.2d at 329. 

 We need go no further. Since the ALJ's conclusion

that the claimant can continue to do her prior medium-level

work is not readily verifiable on the record as it stands, we

 -9-

think that the case must be remanded to the Secretary for

additional evidence of functional ability.6 6

 The judgment of the district court is vacated and 

the case is remanded with directions to remand to the 

Secretary for further proceedings consistent with this

opinion.

  

 6Because we remand for further development of the record, 6
we do not reach the other arguments advanced by the claimant
on appeal.

 -10-