Rallis v. Social Security Admin.      CV-03-223-JD   01/20/04
            UNITED STATES DISTRICT COURT FOR THE
                   DISTRICT OF NEW HAMPSHIRE


Ekaterini Rallis

     v.                              Civil No. 03-223-JD
                                     Opinion No. 2004 DNH 016
Jo Anne B. Barnhart, Commissioner,
Social Security Administration


                        O R D E R


     Ekaterini Rallis again seeks judicial review, pursuant to

42 U.S.C. § 405(g), of a decision by the Commissioner of the

Social Security Administration, denying her application for

social security benefits under Title II of the Social Security

Act.  On March 29, 2002, the court reversed and remanded the

Commissioner's decision denying Rallis's application for

benefits due to factual and legal errors in the decision of

Administrative Law Judge ("ALJ") Frederick Harap.  Following

remand, ALJ Harap held a second hearing on Rallis's claim for

benefits and issued a second decision denying her claim.

     The second decision became the final agency

determination, apparently without review by the Appeals

Council.  Rallis contends that the decision should be reversed

because the ALJ's credibility and residual functional capacity

("RFC") assessments again were not supported by substantial

evidence.  She also contends the ALJ failed to adequately

explain the bases for the decision.  The Commissioner moves to

affirm the decision.

## Background

The medical evidence pertaining to Rallis's claim was summarized in the court's order of March 29, 2002. No additional evidence was submitted on remand. The joint statement of material facts submitted by the parties in this case does not appear to be materially different from the factual summary previously submitted, except for information concerning the subsequent hearing and disposition. Therefore, the entire factual summary will not be repeated in this order.

Rallis injured her back in an automobile accident in 1993. She claims that she has been unable to work since July 31, 1993, because of limitations due to pain caused by her back condition. Rallis has received treatment for her back condition, beginning after the accident in 1993 and continuing to the present, from physicians including Dr. Sakellarides, Dr. Mitchell Keltey, Dr. Mats Agren, and Dr. Clinton Miller. Dr. Frank Graf, an orthopaedic surgeon, and David Camlin, a vocational consultant, provided vocational and RFC assessments. Dr. Melvin Rodman, a state agency doctor, also provided a functional capacity assessment. Rallis's insured status expired on December 31, 1998.

2

In the first decision, issued on November 21, 2000, the ALJ found that Rallis's allegations as to her limitations were not totally credible. He found that Rallis "is unable to lift and carry more than 20 pounds occasionally or 10 pounds frequently. She would need the freedom to sit or stand at will and she should avoid working at heights or around machinery. Additionally, she should avoid performing tasks that require frequent balancing, kneeling, crouching, or occasional climbing of ladders or scaffolding or tasks that require stooping or crawling. She should also avoid exposure to extreme cold." Rec. at 27. The ALJ found that Rallis was unable to return to her former work as a hand cementer in a shoe factory because that job required her to sit for extended periods of time, which she could no longer do. The vocational expert testified that someone with Rallis's limitations could perform the occupations of a classifier, a hand packer, a photographic finisher, and a preparer. Based on her RFC and the testimony of the vocational expert, the ALJ found that Rallis was not disabled.

Rallis sought judicial review pursuant to § 405(g). This court reversed the decision after determining that the ALJ had selectively highlighted parts of the medical record, had misconstrued some of the evidence, and had applied the wrong

3

legal standard for determining disability. The court remanded the case to the Commissioner for further proceedings. Following remand, that decision was vacated by the Appeals Council.

On the direction of the Appeals Council, the ALJ held a second hearing on January 27, 2003.[1] Rallis was represented by counsel, and she testified at the hearing. In addition, Rallis's son, Peter Rallis, testified about his mother's limitations, and a vocational expert testified. In his decision issued on April 14, 2003, the ALJ again found that Rallis's allegations regarding her limitations were not totally credible. He found that she retained a RFC for a range of light work in that she could "lift and carry no more than 20 pounds occasionally and 10 pounds frequently. Further the claimant could only occasionally perform postural activities, could not work at heights or around moving machinery and she had to avoid concentrated exposure to extreme cold." Based on the new findings and the vocational expert's testimony, the ALJ concluded that Rallis could return to her former work as a hand cementer in the shoe industry.

---

[1]Although the hearing was first held on November 14, 2002, because of difficulties with the translator, a new hearing was required.

He concluded that she was not disabled and denied her claim for benefits.


## Discussion

The court must uphold a final decision of the Commissioner denying benefits unless the decision is based on legal or factual error. Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (citing Sullivan v. Hudson, 490 U.S. 877, 885 (1989)). The Commissioner's factual findings are conclusive if based on substantial evidence in the record. § 405(g); Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation omitted). In making the disability determination, "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

To be eligible for social security benefits, the claimant must show that she was disabled, meaning that she had a

5

medically determinable physical impairment that lasted for at least twelve months, beginning before the expiration of her insured status, and that the impairment made her unable to engage in any substantial gainful activity. 42 U.S.C. § 423(a)(1)(D); Henrie v. U.S. Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993). Rallis's application was denied at step four of the sequential evaluation process set forth in 20 C.F.R. § 404.1520.[2] When an application is denied at step four, the claimant bears the initial burden of showing that she is no longer able to perform her previous work because of her impairments. See Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001); Manso-Pizarro, 76 F.3d at 17.

To meet her burden, the claimant must "lay the foundation as to what activities her former work entailed, [and] . . .

--------

[2]The ALJ is required to make the following five inquiries when determining if a claimant is disabled:

   (1) whether the claimant is engaged in substantial
   gainful activity;
   (2) whether the claimant has a severe impairment;
   (3) whether the impairment meets or equals a listed
        impairment;
   (4) whether the impairment prevents the claimant from
        performing past relevant work; and
   (5) whether the impairment prevents the claimant from
doing     any other work.

See § 404.1520

point out (unless obvious)-- so as to put in issue--how her functional incapacity renders her unable to perform her former usual work." Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 5 (1st Cir. 1991). If the claimant meets her burden of putting her prior work at issue, "the ALJ must compare the physical and mental demands of [the claimant's] past work with current functional capability." Manso-Pizarro, 76 F.3d at 17. The ALJ may rely on the claimant's own description of her former job duties and demands in assessing her ability to do that work. See id. The ALJ must determine whether the claimant's impairments, as presented in the record, prevent her from performing her past work based on her RFC and the demands of her past work. See 20 C.F.R. § 404.1520(e) & § 404.1545(a); see also Santiago, 944 F.2d at 7.

In making an RFC determination on behalf of the Commissioner, the ALJ must consider all relevant medical evidence in the record along with the claimant's own description of her limitations, including her subjective complaints of pain. See Manso-Pizarro, 76 F.3d at 17; Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003). To decide whether a claimant's subjective complaints of pain are credible, an ALJ must evaluate the medical signs and laboratory findings, any diagnosis, prognosis or other medical

7

opinions, and any statements or reports from the plaintiff or treating or examining physicians or psychologists about the patient's medical history. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). Because an individual's pain can sometimes result in a greater severity of impairment than can be shown by the objective medical evidence, an ALJ must also consider:

> 1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
> 2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
> 3. Type, dosage, effectiveness, and adverse side-effects
of   any pain medication;
> 4. Treatment, other than medication, for relief of pain;
> 5. Functional restrictions; and
> 6. The claimant's daily activities.

Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 29 (1st Cir. 1986); see also 20 C.F.R. § 404.1529(c)(3); SSR 96-7p.

Rallis concedes that the ALJ identified the appropriate governing standard for assessing her credibility as to the disabling effects of her pain. She argues, however, that he did not properly apply the criteria to the factual record in the case. As such, Rallis contends, substantial evidence does not support the ALJ's findings.

The ALJ noted the testimony at the hearing that Rallis had difficulty performing the activities of daily living and stated that the record confirmed that she had difficulty performing those activities. As in his previous decision,

however, the ALJ again found that "it appears that gardening was the only activity that she complained was totally precluded by her back and neck symptoms." Rec. at 326. This court held in the first decision that "[a] social security claimant need not be completely disabled from all activities to be disabled for purposes of social security benefits. See, e.g., Balsamo v. Chater, 142 F.3d 75, 81-82 (2d Cir. 1998); Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir. 1996); Smith v. Califano, 637 F.2d 968, 971 (3d Cir. 1981)." Rallis v. Barnhart, 2002 DNH 074, at *15 (D.N.H. Mar. 29, 2002). To the extent that finding influenced the ALJ's disability determination, it was error.

The ALJ again selectively reviewed the medical evidence noting only evidence that the ALJ interpreted as "negative findings from objective measures of pain." Rec. at 326. Although the treatment record one month after her accident in 1993 reports that she had a full range of motion of the cervical spine, as the ALJ notes, the same record also reports that her forward flexion was limited to twenty to thirty degrees with a list to the right and that her symptoms were lumbar. An X-ray showed significant end plate collapse and evidence of degenerative disc disease. While Dr. Miller reported in February of 1999 that straight leg raising tests

9

were normal, earlier examination results showed limitations in the range of motion and pain. The medical records document her complaints of radiating pain, and tests and examinations showed limited ranges of motion and lumbar radiculopathy as well as bulging discs at L1-2 and L4-5. As noted in the previous order in this case, that a later MRI no longer showed a bulging disc at L4-5 does not rule out the earlier results and findings.

In the first decision, the ALJ found "the claimant testified that steroid injection were [sic] not effective in relieving her pain; however, her treating physician noted that the claimant experienced up to two weeks worth of pain relief and that during that time she was able to remain quite active." Rec. at 25. On review, the court noted that the ALJ failed to discuss Dr. Miller's treatment "report in August of 1999 that Rallis had undergone multiple injections without any enduring relief." Rallis, 2002 DNH 074, at *14. As part of the current decision, the ALJ found "the claimant testified that conservative treatment with steroid injection were [sic] not effective in relieving her pain; however, her treating physician noted that the claimant experienced up to two weeks worth of pain relief and that during that time she was able to remain quite active." Rec. at 327. Again, despite the

court's previous ruling, the ALJ failed to consider Dr. Miller's report to the contrary. Similarly, the ALJ again found that Rallis was advised to use medication in moderation and that she was being treated with over-the-counter medication when the record demonstrates that many medications had been prescribed for Rallis.

The ALJ again noted Dr. Miller's report that Rallis had repeatedly solicited an opinion letter from him that she was permanently disabled due to her back condition and that he was unable to comply with her request. In the first decision, the ALJ did not explain the significance of that report for his disability determination. In the current decision, the ALJ stated that Dr. Miller's report suggested "treating source reluctance to give the claimant's subjective complaints any credence." Rec. at 326. It appears that the ALJ is exaggerating the significance of Dr. Miller's report, which merely states he could not give her a letter that she was permanently disabled, not that he was reluctant to give her complaints of pain <u>any</u> credence, and carefully reviews Rallis's symptoms and the medical findings. Dr. Miller also notes the communication problems caused by Rallis's difficulty with English.

The ALJ corrected his finding that "all treating

physicians advised [Rallis] to engage in aggressive physical therapy programs and all noted that [she] was reluctant to do so," Rec. at 25, to reflect that only one treating physician, Dr. Miller, made that recommendation, Rec. at 326. He also explained that Dr. Miller's recommendation suggested "an ability to engage in a level of activity greater that [sic] which the claimant had alleged." Rec. at 326. Dr. Miller explained in his report, however, that Rallis was resistant to his recommendation of aggressive physical therapy because "it failed previously." Rec. at 276.

Although the ALJ corrected some of the deficiencies in his first decision, the second decision is nevertheless insufficient due to the ALJ's continued mistakes in analyzing the record. The ALJ again misconstrued some of the evidence.[3] Most importantly, it appears that the ALJ again applied the erroneous standard that because Rallis's pain did not totally preclude all of her activities, she did not show that she was

---

[3]Oddly, in the present decision, the ALJ made a different RFC assessment than he had previously, based on essentially the same record, without any explanation. He then found that Rallis was able to return to her former work, again without mentioning his different previous finding that she was unable to do her former work. Although the ALJ made a new determination and was not bound by his previous findings, the discrepancies without any explanation are puzzling.

disabled. As the court clearly held in the prior order: "A social security claimant need not be completely disabled from all activities to be disabled for purposes of social security benefits. See, e.g., Balsamo v. Chater, 142 F.3d 75, 81-82 (2d Cir. 1998); Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir. 1996); Smith v. Califano, 637 F.2d 968, 971 (3d Cir. 1981)." Rallis, 2002 DNH 074, at *15. In addition, in making the RFC assessment, the ALJ relied on the RFC assessments provided by the state agency medical consultants in 1999. He did not rely on Dr. Frank Graf's assessment, done following an examination on September 15, 2000, and a review of Rallis's medical records, because his findings were based on only one examination a year and a half after the expiration of her insured status. See 20 C.F.R. § 404.1527(d)(1) (generally opinions of examining physicians given more weight). The ALJ failed to note, however, that Dr. Graf, like the state agency consultants, based his RFC assessment in part on Rallis's medical records, and that Dr. Graf is an orthopaedic surgeon, a specialist in the relevant medical field. See § 404.1527(d)(5) (generally opinions of specialists given more weight). The ALJ ignored the assessment of Rallis completed by David R. Camlin, a vocational consultant. Therefore, the ALJ failed to consider

13

or properly distinguish material record evidence in making his RFC assessment.

Because of the legal and factual errors in the ALJ's decision, the case again must be reversed and remanded for further proceedings consistent with this order.  The court recommends that this case be assigned to a different ALJ.


## Conclusion

For the foregoing reasons, the plaintiff's motion to reverse the decision of the Commissioner (document no. 6) is granted.  The Commissioner's motion to affirm (document no. 8) is denied.

The case is remanded for further proceedings that are consistent with this order.

As this is a "sentence four" remand, the clerk of court shall enter judgment and close the case.

SO ORDERED.

 

         _____
         Joseph A. DiClerico, Jr.
         United States District Judge

January 20, 2004

cc:  Raymond J. Kelly, Esquire

14

David L. Broderick, Esquire