Courchesne v. SSA                    CV-95-427-B    06/13/96

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Angela Courchesne</u>

    v.                                     Civil No. 95-427-B

<u>Shirley S. Chater, Commissioner</u>
<u>of Social Security</u>

# O R D E R

Angela Courchesne appeals the Commissioner's decision to deny her application for disability insurance benefits at Step Four of the sequential analysis. The Administrative Law Judge ("ALJ") determined that Courchesne could perform her previous work as an office cleaner or as a school crossing guard and therefore that she was not disabled. Courchesne argues that the record lacks substantial evidence that she could perform either job and that her work as a school crossing guard was not relevant at Step Four as it did not constitute substantial gainful activity. For the reasons that follow, I reverse the Commissioner's decision and remand for further proceedings.

## I. BACKGROUND

Courchesne applied for disability insurance benefits

alleging that she had been unable to work since August 7, 1990. Her chief complaints are pain, numbness, and loss of strength in her arms and hands, particularly on her dominant left side. Courchesne also claims that she cannot read or write and that she can only add and subtract. Her medical records include evaluation of her problems with her arms and hands, treatment for carpal tunnel syndrome, and testing of her cognitive abilities.

Courchesne was treated by Dr. James Shea, an orthopedic surgeon, from August 1990 to March 1993 for pain and numbness in her arms and hands. Dr. Shea's notes from her first examination on August 7, 1990, reported that Courchesne complained of numbness in her left hand with discomfort in her left wrist and elbow. He noted that her work required a twisting hand motion and that she was left handed. He also noted that she had no history of injury to her arm, that she had no neck symptoms, and that her right arm was well. Dr. Shea's physical examination showed that Courchesne had a full range of motion in both shoulders, both elbows, and both wrists. His neurological examination of her arms showed that her left grasp was very weak compared to the right, and her left thumb had decreased appreciation of a pin prick, but he found no atrophy or other abnormalities of sensation or strength. He diagnosed carpal

2

tunnel syndrome in Courchesne's left wrist and inflammation in the left elbow. He recommended that she stop working for one week. At Courchesne's subsequent appointments over the next month, Shea prescribed Feldene, an anti-inflammatory, analgesic, and anti-fever medication; provided her with a wrist brace; and began to discuss surgery to address the worsening of her symptoms.

Courchesne's symptoms improved slightly during the fall, but because she continued to have numbness in her fingers, she underwent carpal tunnel release surgery in November 1990. She made a good recovery from the surgery but continued to report numbness in her left fingers and thumb. Through the next year, she developed pain in her left wrist and elbow, difficulty with her right wrist requiring a brace, and increased numbness in her left fingers and thumb.

Dr. William Kilgus examined Courchesne on January 24, 1991, for the workers' compensation insurance carrier. He reported that Courchesne had tenderness in her left wrist and a decrease in sensation and weakness in her left hand. He found that her range of motion was good in her fingers and wrist. He suggested an intense program in occupational therapy. He stated that she

3

had some work capacity but should not do work that involved continuous or repetitive use of the left hand.

Dr. William Davison examined Courchesne on December 31, 1991, also for the workers' compensation carrier. He found that she had a moderate tremor when she tried to grasp strongly with her left hand. He diagnosed carpal tunnel syndrome of the left wrist that would prevent Courchesne from returning to work requiring delicate use of her hands and forearms. He stated that she could perform modified light-duty work lifting and carrying up to twenty pounds, but would have difficulty performing simple grasping, fine manipulation, and repetitive motions with her left hand and forearm.

By June 8, 1992, Courchesne reported to Dr. Shea that she could no longer knit, crochet, or sew because of her arm and hand symptoms. Dr. Shea's notes indicate that she did not improve through March 1993.

Dr. Burton Nault reviewed Courchesne's record on June 14, 1993, for the New Hampshire Department of Health and Human Services. Dr. Nault assessed Courchesne's residual functional capacity ("RFC") and determined that she could occasionally lift and carry up to twenty pounds, frequently lift and carry up to ten pounds, stand, walk, or sit for up to six hours per day with

4

normal breaks, and push and pull without limitation. He found no postural limitations but found that she would have to avoid fine, rapid, repetitive, manipulative movements with her hands and fingers. Two other doctors who later reviewed Courchesne's records concurred with Dr. Nault's determination.

Courchesne was given intelligence tests by Dr. William Jamieson, a psychologist, on August 13, 1993. Her testing results were interpreted as showing an overall intellectual capacity in the borderline to low-average range. Dr. Jamieson determined that Courchesne's testing results did not explain her problems with reading and writing, and he questioned whether she had a more specific developmental language disability. Dr. Jamieson concluded that Courchesne had the ability to comprehend instructions and to relate appropriately in a work situation.

Dr. Shea reevaluated Courchesne's condition on April 15, 1994, for vocational rehabilitation. He reported tenderness in her left elbow and wrist, sensory deficit in all fingers of her left hand, but a full range of motion in her left elbow and wrist. Based on Courchesne's records, Dr. Shea determined that she had a capacity for sedentary work with light assistive work with her hands and arms but she could not do work requiring significant demanding use of her arms. Dr. Shea's subsequent

5

report, dated August 1, 1994, stated that Courchesne's left arm was markedly disabled and that her right arm also had restricted function. He diagnosed her condition as left elbow epicondylitis (inflammation), carpal tunnel syndrome, and deQuervain's disease in the left wrist.

Courchesne and her husband testified at the hearing before the ALJ on July 19, 1994. Courchesne explained that she could not read and could only add and subtract. She testified about her previous work, her carpal tunnel condition, and her medical treatment. She said that she had numbness in her hands and arms after about five minutes of use that caused her to drop things. She said that she could not open jars, and that she had difficulty doing laundry, lifting a gallon of milk, using a touch tone phone, and writing her name due to the numbness and shaking in her left hand. She said that she could drive a car but that her left arm went numb after two minutes of driving and that it took fifteen minutes to recover. She testified that although she had been able to perform the duties of both the office cleaning job and the school crossing guard job, she could no longer do the vacuuming required for cleaning and could not hold up the sign used by crossing guards. Her husband testified that the numbness

6

and shaking in her left hand caused his wife difficulty in doing routine household tasks.

A vocational expert testified at the hearing. The ALJ asked the vocational expert whether a hypothetical claimant of Courchesne's age and work experience, who was limited to light work but was unable to use her hands for fine and repetitive movements could still do any of the work Courchesne had done in the past. The vocational expert testified that the conditions in the hypothetical would preclude Courchesne's previous work and explained that work as a school crossing guard and as an office cleaner did not require fine hand movements but did require repetitive arm and hand motions on an ongoing basis. The vocational expert further stated that a school crossing guard did not have to use her hands as regularly as a typist. The vocational expert also testified that unskilled entry level jobs existed for a hypothetical claimant who was limited to light work involving gross but not fine manipulation.

The ALJ determined that Courchesne had severe impairment of her left arm and right wrist that caused significant limitation of her ability to perform work requiring extensive use of her arms but that her subjective complaints including pain were not entirely credible. He found that she was not impaired by an

7

inability to read or write as she had described. He found that she had a RFC for work except that she could not lift or carry more than twenty pounds occasionally and not more than ten pounds frequently. He also found that she could not perform tasks that required repetitive use of her hands or fine manual dexterity. Based on his findings, the ALJ concluded that Courchesne was able to perform her past work as an office cleaner and as a school crossing guard, although she could not do her other past work.

Courchesne appealed the decision to the Appeals Council and submitted the following additional evidence that was not submitted to the ALJ.[1] Dr. Steven L. Brown, a hand surgeon, wrote a report dated November 16, 1994, based on examinations on July 1 and October 24, 1994, for Courchesne's continued problems with left arm numbness and pain. He found that although she complained with any motion or use of her elbow or wrist, she had a full range of motion and had no evidence of ongoing neurologic problems. He concluded that Courchesne had some problems with a cumulative traumatic disorder in her left arm. He reported that

---

[1] The Commissioner does not challenge consideration of the evidence submitted only to the Appeals Council and, in fact, relies on Dr. Brown's report in the motion to affirm. As no objection is raised, I will consider the additional evidence submitted to the Appeals Council.

8

she would be capable of sedentary work, and also would be able to work as a school crossing guard, although she could not work as an office cleaner because the work was too repetitive and traumatic. Dr. William Windler provided a medical assessment of ability to do work-related activities dated December 12, 1994. He evaluated her work ability as severely restricted due to hand numbness, tremor, and weak grip.

Courchesne submitted a copy of the Dictionary of Occupational Titles description of the characteristics of a school crossing guard. Courchesne also submitted her affidavit and her W-2 Wage Statements showing that she earned $794.88 in 1986 and $1368.50 in 1987 from the City of Manchester for work as a crossing guard between September 1986 and September 1987. She stated in her affidavit that she tried to work as a crossing guard again for one day and was unable to do the job because her arm shook when she held the sign or held her arm to stop traffic.

The Appeals Council denied review, and Courchesne now appeals the Commissioner's decision.

## II.  STANDARD OF REVIEW

After a final determination by the Commissioner and upon

request by a party, this court is authorized to review the pleadings and the transcript of the record of the proceeding, and enter a judgment affirming, modifying, or reversing the decision. 42 U.S.C.A. § 405(g) (West Supp. 1995). The court's review is limited in scope, however, as the Commissioner's factual findings are conclusive if they are supported by substantial evidence. Id.; Irlanda Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner is responsible for settling credibility issues, drawing inferences from the record evidence, and resolving conflicting evidence. Id. Therefore, the court must "'uphold the [Commissioner's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion.'" Id. (quoting Rodriguez v. Secretary of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). However, if the Commissioner has misapplied the law or has failed to provide a fair hearing, deference to the Commissioner's decision is not appropriate, and remand for further development of the record may be necessary. Carroll v. Secretary of Health & Human Servs., 705 F.2d 638, 644 (2d Cir. 1983). See also Slessinger v. Secretary of Health & Human Servs., 835 F.2d 937, 939 (1st Cir. 1987). I review Courchesne's

10

appeal in light of the applicable standard.


## III.  DISCUSSION

The ALJ concluded at the fourth step of the five step disability determination analysis,[2] that Courchesne was not disabled because she could return to her previous work as an office cleaner or as a school crossing guard.  At Step Four, the ALJ must determine whether an impairment, or combination of impairments, prevents the claimant from performing her past relevant work.  20 C.F.R. § 404.1520(e) (1994).

### A. Courchesne's Work As A Crossing Guard

To qualify as past relevant work within the meaning of the Commissioner's regulations, the claimant must have past "work

---

[2] The ALJ is required to consider the following five steps when determining if a claimant is disabled:
    (1) whether the claimant is engaged in substantial gainful activity at the time of the claim;
    (2) whether the claimant has a severe impairment that has lasted for twelve months or had a severe impairment for a period of twelve months in the past;
    (3) whether the impairment meets or equals a listed impairment;
    (4) whether the impairment prevents or prevented the claimant from performing past relevant work;
    (5) whether the impairment prevents or prevented the claimant from doing any other work.
20 C.F.R. § 404.1520 (1994).

11

experience [that] . . . was done within the last 15 years, lasted long enough for [the claimant] . . . to learn to do it, and was substantial gainful activity."  20 C.F.R. § 404.1565(a) (1994).[3] Part-time work may qualify as substantial gainful activity if it involved significant mental or physical activities.  20 C.F.R. § 404.1572(a) (1994).  If a claimant's earnings averaged less than $190 per month during years between 1979 and 1990, however, a presumption generally arises that the claimant did not engage in substantial gainful activity.  20 C.F.R. § 404.1574(b)(3) (1994); see Zenker v. Bowen, 872 F.2d 268, 270 (8th Cir. 1989).

Courchesne stated in her affidavit that she earned less than $190 per month during the year that she worked as a school crossing guard for the Manchester Police Department.  Her W-2 Wage and Tax Statements confirm that she earned an average of $180.28 per month from the City of Manchester between September 1986 and September 1987.  Courchesne stated that she worked two

---

[3]  Although the Commissioner contests the applicability of § 404.1565(a) at the fourth step, the Social Security Administration's own policy statements explaining "past relevant work" use the three-part definition of "work experience" in § 404.1565(a) to define past relevant work at the fourth step.  See Social Security Ruling 82-61 (1982), 1982 WL 31387; Social Security Ruling 82-62 (1982), 1982 WL 31386; see also Lauer v. Bowen, 818 F.2d 636, 639-40 (7th Cir. 1987); Curtis v. Sullivan, 808 F. Supp. 917, 922 (D.N.H. 1992).

12

to three hours per day.  Even assuming that Courchesne was capable of performing the school crossing guard job, there is no evidence in the record that the job could provide income at the level of substantial gainful activity.  <u>See</u> <u>Lauer v. Bowen</u>, 818 F.2d 636, 640 n.10 (7th Cir. 1987).  Therefore, the school crossing guard position should not have been considered as past relevant work at the fourth step of the analysis, and I need not determine whether substantial evidence supports the ALJ's determination that Courchesne was able to perform the work.

**B. <u>Courchesne's Work as an Office Cleaner</u>**

To make the determination of whether a claimant can perform past relevant work, "the ALJ must compare the physical and mental demands of that past work with current functional capability." <u>Manso-Pizarro v. Secretary of Health and Human Servs.</u>, 76 F.3d 15, 17 (1st Cir. 1996) (citing 20 C.F.R. § 404.1560(b)).  Thus, a decision that a claimant can return to her past work must be supported by factual findings concerning the claimant's RFC and the physical and mental demands of the claimant's previous work. <u>Santiago v. Secretary of Health and Human Servs.</u>, 944 F.2d 1, 5 n.1 (1st Cir. 1991); <u>see also</u> SSR 82-62, 1982 WL 31386 *4.

The initial burden is on the claimant to make a "reasonable threshold showing that she cannot return to her former employment

13

because of her alleged disability." Santiago, 944 F.2d at 5; accord Manso-Pizarro, 76 F.3d at 17. To carry her burden, the claimant must produce evidence of the physical and mental demands of her prior work and describe her limitations, indicating how her current functional capacity precludes her from performing her prior work. Santiago, 944 F.2d at 5. The ALJ may rely on the claimant's own descriptions of her duties and her functional limitations. Id. If the claimant can still perform her past work, as she actually performed it when employed, she is not disabled. Id. If the ALJ finds that the claimant cannot perform her actual previous work, however, the claimant nevertheless is not disabled if she "retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." SSR 82-61, 1982 WL 31387 *2; accord Santiago, 944 F.2d at 5 n.1; Gray v. Heckler, 760 F.2d 369, 372 (1st Cir. 1985).

The ALJ found that Courchesne could not perform tasks requiring extensive use of her arms, repetitive use of her hands or fine manual dexterity.[4] Courchesne testified that she could

_____

[4] Relying on Dr. Nault's RFC assessment, the Commissioner asserts that the record contains substantial evidence to support a finding that Courchesne could repetitively use her arms and

14

no longer do the vacuuming required of an office cleaner and the vocational expert testified that an office cleaner job required an employee to repetitively use her arms and hands. The record contains no evidence to support a contrary finding. Therefore, the record does not contain substantial evidence to support the ALJ's determination that Courchesne could return to her past job as an office cleaner.

Because the ALJ's determination at Step Four is not supported by substantial evidence in the record, the decision is reversed. Although the hearing record includes evidence pertaining to a Step Five evaluation, the ALJ did not make alternative findings to support a disability determination at Step Five. Accordingly, the case is remanded to the Commissioner for further proceedings at Step Four of the sequential analysis, and, if necessary, to proceed to Step Five.

## IV.  CONCLUSION

For the foregoing reasons, Courchesne's motion to reverse the decision of the Commissioner (document no. 7) is granted, and

---

hands as long as she avoided fine, repetitive, manipulative use of her hands and fingers. Even if this assertion were true, it would be irrelevant because the ALJ made a contrary finding.

the Commissioner's motion to affirm (document no. 11) is denied.
The case is remanded for further proceedings pursuant to sentence
four of 42 U.S.C.A. § 405(g). Judgment shall be entered
accordingly.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

June 13, 1996

cc: David Broderick, Esq.
    Elizabeth Jones, Esq.