Loftus v. SSA                    CV-96-266-B    08/20/97

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Margaret Loftus

v.                                              Civil No. 96-266-B

Shirley S. Chater,
Commissioner, Social Security
Administration

**O R D E R**

Margaret Loftus challenges a decision by the Commissioner of
the Social Security Administration denying her application for
disability benefits.  Loftus has been treated for complaints
related primarily to lower back pain since 1990.  She contends
that the Administrative Law Judge ("ALJ") wrongly concluded that
she could perform her job as a bank supervisor in spite of her
back pain.  Because I find substantial evidence in the record
supporting the Commissioner's decision, I affirm.

**I.   BACKGROUND**[1]

**A.  Loftus's Medical History**

Margaret Loftus had been employed as a bank teller prior to
December 24, 1990, the date she last worked.  She began as a
part-time teller in 1981 and became a supervisor with more
responsibility over the bank's coin and currency.  She later
became a teller manager which required taking care of the vaults,

---

[1]  Unless otherwise indicated, the facts are either undisputed
or taken from the joint statement of material facts filed by the
parties.

lifting and carrying the coin bags, as well as preparing work schedules and reviews.  Loftus testified that her back started to bother her in the fall of 1990 and the pain was made worse from lifting coin bags and currency.

Loftus saw Dr. Karagiannis, her primary physician, who prescribed muscle relaxants and physical therapy.  Loftus indicates that her pain lessened when she was undergoing physical therapy, but the benefits would disappear within a half an hour.  Loftus was later treated by Dr. Vailas, an orthopaedic surgeon, who prescribed different therapy including exercise.  Again, Loftus complained that the therapy provided only short-term relief.

Dr. Vailas referred Loftus to Dr. Lynch, a rheumatologist, in 1991.  Dr. Lynch ordered a bone scan, which was done on April 26, 1991 and showed no abnormalities.  Loftus returned to Dr. Lynch on May 14 and June 18, 1991 with no changes noted except for a muscle relaxant prescription.  Dr. Lynch discontinued her physical therapy on May 16, 1991 at which time he noted that Loftus still had intermittent bouts of significant pain.  Dr. Lynch completed a physical capacity evaluation form indicating that Loftus could not lift or carry even 1 to 10 pounds, or bend, stoop, squat, kneel, crawl, push, or pull.  On July 1, 1991, Dr.

Lynch noted that although Loftus's symptoms suggested an arthritic process, a review of her X-rays showed very little arthritic change.

Loftus continued treating with both Dr. Karagiannis and Dr. Lynch. On August 7, 1992, Dr. Lynch reported to the Social Security Administration that his physical examination revealed that Loftus had good pulses, motor strength, sensation and deep tendon reflexes. He further noted that x-rays revealed evidence of degenerative arthritis which, despite treatment, had continued to be symptomatic. Dr. Lynch at that time opined that Loftus remained unable to engage in occupations that required bending or lifting.

On December 6, 1993, Dr. Lynch again reported to the Social Security Administration that while x-rays revealed evidence of degenerative arthritis, Loftus's motor strength, sensation, and deep tendon reflexes were normal and her straight leg raising tests were negative. Dr. Lynch completed a similar report on March 4, 1994.

On February 7, 1994, Dr. Karagiannis completed a medical form diagnosing Loftus's condition as a dorsal lumbar sprain. He stated that Loftus had a limited ability to sit, stand, bend, and lift, and indicated that the prognosis was unknown. Dr.

3

Karagiannis completed a similar report on March 21, 1994 indicating that Loftus was not capable of even part-time work. On June 30, 1994, Dr. Karagiannis completed a Medical Assessment form in which he advised Loftus to lift no more than 10 pounds and to sit, stand or walk no more than two hours in an eight-hour work day.

On November 8, 1994, Dr. Lynch completed a form in which he stated that Loftus was unable to lift or carry any weight due to her arthritis. He believed that she could stand and walk for two to four hours in an eight-hour work day, in intervals of up to 30 minutes. Her ability to sit was also limited to two to four hours per day. He further concluded that her cumulative ability to sit, stand and walk in an eight-hour work day was estimated to be between four to six hours. On November 14, 1994, Dr. Lynch met with Loftus to review his assessment of her condition. Based on his discussion with her and despite the fact that he could not document any change in her status, Dr. Lynch was "willing to change [his] assessment based primarily on her perception of her current level of symptomatology." Therefore, Dr. Lynch changed the assessment to limit her to only two hours per day of sitting, standing, or walking with a total work capacity of two to four hours per day.

At her hearing, Loftus testified that she cannot sit for long periods without numbness in both legs. While walking relieves the numbness, she reported that it does not alleviate the pain. Further, if she walks for more than 10 to 20 minutes, Loftus testified the pain goes through her back and across her hips. Loftus also complained that humidity, rain, and cold weather aggravates her condition.

**B.   Loftus's Application for Benefits**

Loftus filed an application for benefits on July 28, 1992, alleging an inability to work from December 30, 1990. Loftus's application was denied by the Social Security Administration on August 20, 1992. Loftus filed a second application on September 13, 1993, which was initially denied on December 29, 1993. Her request for reconsideration was also denied on March 28, 1994. The ALJ before whom Loftus then appeared considered the matter de novo, conducted a hearing on November 15, 1994, and on February 24, 1995, concluded that Loftus was not disabled. The Appeals Council denied Loftus's request for review on February 15, 1996, making the Secretary's decision final and subject to this appeal.

## II.   STANDARD OF REVIEW

Pursuant to 42 U.S.C.A. § 405(g) (West Supp. 1996), the

court is empowered to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." In reviewing a Social Security decision, the factual findings of the Commissioner "shall be conclusive if supported by 'substantial evidence.'" Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting 42 U.S.C. § 405(g)(1991)). Thus, the court must "'uphold the [Commissioner's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion.'" Id. (quoting Rodriguez v. Secretary of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). Moreover, it is the Commissioner's responsibility to "determine issues of credibility and to draw inferences from the record evidence," and "the resolution of conflicts in the evidence is for the [Commissioner], not the courts." Ortiz, 955 F.2d at 769. If the facts would allow different inferences, the court will affirm the Commissioner's choice unless the inference drawn is unsupported by the evidence. Rodriguez Pagan v. Secretary of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

## III.  DISCUSSION

The ALJ concluded at the fourth step of the five-step disability determination analysis,[2] that Loftus was not disabled because she retained the ability to perform a wide range of light exertional tasks, including the work she previously performed. Loftus argues that the ALJ (1) improperly rejected the opinions of treating physicians; (2) erred in his credibility finding concerning Loftus's subjective pain complaints; (3) failed to meet the Commissioner's burden of proof at step four; and (4) failed to prove that Loftus retained the RFC to engage in any substantial gainful activity.  I address each argument in turn.

### A.  Rejection of Physicians' Medical Opinions

Loftus argues that the ALJ erred by rejecting the conclusions of Dr. Karagiannis and Dr. Lynch, two of Loftus's

---

[2]  The ALJ is required to consider the following five steps when determining if a claimant is disabled:
   (1) whether the claimant is engaged in substantial gainful activity at the time of the claim;
   (2) whether the claimant has a severe impairment that has lasted for twelve months or had a severe impairment for a period of twelve months in the past;
   (3) whether the impairment meets or equals a listed impairment;
   (4) whether the impairment prevents or prevented the claimant from performing past relevant work;
   (5) whether the impairment prevents or prevented the claimant from doing any other work.
20 C.F.R. § 404.1520 (1997).

7

treating physicians who concluded she was disabled. First Circuit law does not require that an ALJ give controlling weight to a treating physician's opinion. Arroyo v. Secretary of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991); 20 C.F.R. § 404.1527(d)(2)(1997)(controlling weight given to treating source's opinion when "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record"). If a treating physician's opinion is not given controlling weight, the ALJ is required to apply a number of factors and explain the reasons for his decision. See 20 C.F.R. § 404.1527(d)(1997). The ALJ considers the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the consistency of the opinion with other opinions, and whether the opinion is supported by medical signs and laboratory findings. Id. The ALJ must not substitute his own judgment for uncontroverted medical opinion. Rosado v. Secretary of Health & Human Servs., 807 F.2d 292, 293-294 (1st Cir. 1986).

In this case, the ALJ specifically explained the reasons for rejecting the opinions of Dr. Karagiannis and Dr. Lynch. First, the ALJ observed that their disability determinations were

8

inconsistent with their medical determinations over time. For example, the ALJ noted that Dr. Lynch concluded that Loftus would not be capable of lifting any weight, yet he himself had twice concluded otherwise. In addition, the ALJ noted that Dr. Karagiannis conclusions were undermined by his own long-term conservative treatment plan.[3] The ALJ noted that the clinical findings and objective evidence did not support either Loftus's complaints of pain or the treating physicians' conclusions. See 20 C.F.R. § 404.1527(d)(3)(1997) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). Specifically the ALJ noted that:

**[a] review of the objective findings in three consecutive**

---

[3] The ALJ also stated that Dr. Karagiannis agreed to alter Loftus's RFC after meeting with her. The ALJ's reference to Dr. Karagiannis is apparently a typographical error. The evidence suggests that it was Dr. Lynch, in a November 14, 1994 letter to Loftus's attorney, who noted that, "Margaret and I met today and reviewed the disability form that I recently submitted to your office. Based upon her current level of symptomatology, she believes that I have overestimated her work capacity. . . . Although I could not document any objective change in her status, I am willing to change my assessment based primarily on her perception of her current level of symptomatology." This apparent error does not undermine the ALJ's decision to discount the opinions of the treating physicians, particularly because most of the assessments are based on subjective complaints instead of objective medical findings.

9

**consultative examinations by Dr. Lynch reveal no significant structural pathology which provides a reasonable basis for the claimant's subjective systems.** Specifically, Dr. Lynch found normal 5/5 strength in all muscle groups with all sensation intact to light touch and pin. He reported negative straight leg raising and symmetrical reflexes in the knees and ankles. While noting a right lateral rotation limited to 75 degrees and moderate tenderness in the thoracic and lumbar spines, with 1+ muscle spasm in the lumbar apine, **Dr. Lynch concluded that all other musculoskeletal motion in the spine and limbs was normal. Moreover, Dr. Lynch observed no swelling, pain or deformity in any major joints. Radiological tests further confirm the absence of significant musculoskeletal causes which would adequately account for the claimant's complaints.** The only radiological evidence in the record, taken in December, 1990 and November, 1991, show only mild degenerative changes and mild scoliosis in the thoracic spine, and a moderate central herniation with underlying mild stenosis at level L4-5. **The minimal objective evidence in the record fails to comport both with the claimant's testimony of a disabling level of back pain, and the conclusions of Drs. Lynch and Karagiannis that the claimant would be unable to perform even a full range of sedentary type work.**

(emphasis added).

Finally, in addition to properly supporting his rejection of the treating physicians' opinions, the written record contains the medical opinions of three non-examining physicians who concluded that Loftus's limitations would not prevent her from performing light work. See, e.g., Berrios Lopez v. Secretary of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991) (affirming use of non-testifying, non-examining physicians

10

opinions to contradict opinion of treating physician); <u>Rosado</u>, 807 F.2d at 293 (ALJ impermissibly substitutes his own judgment when no RFC assessments are in the record). A Disability Determination Services (DDS) physician completed an RFC assessment in August 1992 based on Loftus's medical reports through August 7, 1992, and concluded that despite some back pain and tenderness, Loftus could lift 20 pounds occasionally, 10 pounds frequently, and could sit, stand and walk each for up to 6 hours a day. A more detailed RFC assessment completed in December 1993 and affirmed in March 1994 based on reports through December 6, 1993, indicates that Loftus could occasionally lift and carry 20 pounds, frequently carry 10 pounds, stand/walk for about 6 hours in a workday and sit about 6 hours in a workday. The RFC noted unlimited ability to push and pull. A narrative section explained that Loftus's:

> pain was initiated while doing some lifting of coin bags at work in November of 1990. Over the past two years, the claimant has had this problem addressed by Dr. Lynch who found that x-ray studies support some mild degenerative changes in the thoracic spine and lumbosacral spine. She has had conservative treatment for this, including physiotherapy and chiropractic treatment. Current evaluation by Dr. Lynch reveals some moderate tenderness in the thoracic and lumbar spine, with some decreased motion. There are no neurological deficits identified.

Since the ALJ and not the treating physician must determine

11

whether Loftus is disabled, and since substantial evidence in the record supports his decision to place less weight on the opinions of Dr. Karagiannis and Dr. Lynch, I reject Loftus's argument that the ALJ erred in rejecting their opinions.

B.    **Credibility Finding on Subjective Pain Complaints**

Loftus next disagrees with the ALJ's finding that her testimony regarding her pain was not entirely credible. Subjective complaints of pain are evaluated in light of all of the evidence.  42 U.S.C.A. § 423(d)(5)(A)(1997 Supp.); 20 C.F.R. § 404.1529(c)(4)(1997); Avery v. Secretary of Health & Human Servs., 797 F.2d 19, 23 (1st Cir. 1986).  "In determining the weight to be given to allegations of pain . . . complaints of pain need not be precisely corroborated by objective findings, but they must be consistent with medical findings."  Dupuis v. Secretary of Health & Human Servs., 869 F.2d 622, 623 (1st Cir. 1989).  When the claimant's reported symptoms of pain are significantly greater than the objective medical findings suggest, the ALJ must consider other relevant information to evaluate the claims.  Avery, 797 F.2d at 23.  The ALJ must inquire about the claimant's daily activities; the location, duration, frequency, and intensity of pain and other symptoms; precipitating and aggravating factors; the characteristics and

effectiveness of any medication, treatments, or other measures the claimant is taking or has taken to relieve pain; and any other factors concerning the claimant's functional limitations due to pain.  20 C.F.R. § 404.1529(c)(3)(1997); Avery, 797 F.2d at 23.  If the ALJ has considered all relevant evidence of claimant's pain, including both objective medical findings and detailed descriptions of the effect of pain on claimant's daily activities, "[t]he credibility determination by the ALJ, who observed the claimant, evaluated [her] demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." Frustaglia v. Secretary of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); see also Gagnon v. Secretary of Health & Human Servs., 666 F.2d 662, 665 (1st Cir. 1981).

Here, the ALJ reasonably determined that the clinical findings simply did not support Loftus's complaints of severe back pain and significant limitation of range of motion.  First, the ALJ noted that a review of the objective findings in three consecutive consultative evaluations by Dr. Lynch revealed no significant structural pathology providing a reasonable basis for Loftus's subjective symptoms.  Dr. Lynch concluded that all other musculoskeletal motion in the spine and limbs was normal and

13

observed no swelling, pain or deformity in any major joints." In addition, the ALJ noted that radiological tests further confirmed the absence of significant musculoskeletal causes which would adequately account for Loftus's complaints.

Second, the ALJ noted that "the nature and extent of the claimant's pain, her course of treatment and activities of daily living suggest a less than disabling level of pain." While acknowledging some medical basis for Loftus's complaints of pain and headaches, the ALJ noted that the medical evidence did not suggest that Loftus suffered from impairments which reasonably would further diminish her ability to work at her established RFC. The ALJ also referred to Loftus's course of treatment, which indicated progress. Finally, the ALJ noted that the plaintiff's daily activities, which included many household chores including occasional cooking and light cleaning, cleaning dishes, dusting, as well as shopping with her spouse and visiting relatives, further demonstrated that her level of pain would not restrict her ability to engage in a full range of light work.

Evaluating a claimant's credibility and resolving conflicts in the evidence is the ALJ's province. See Evangelista v. Secretary of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987). Granting the ALJ's credibility and evidentiary

14

determinations the proper deference, I find sufficient substantial evidence in the record to sustain his credibility finding with respect to Loftus's subjective pain complaints.

## C.  __Step Four Burden of Proof__

Loftus ultimately argues that the ALJ incorrectly concluded that she was not disabled at step four.  Step four of the analysis requires the ALJ to determine if an impairment prevents a claimant from performing her past relevant work.  See 20 C.F.R. § 404.1560 (1997).  If a claimant is still able to engage in work she has performed in the past, then she is not disabled within the meaning of the Social Security Act.  Goodermote v. Secretary of Health & Human Servs., 690 F.2d 5, 7 (1st Cir. 1982);  20 C.F.R. § 404.1520(e) (1997).  To make the determination, "the ALJ must compare the physical and mental demands of that past work with current functional capability."  Manso-Pizarro v. Secretary of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996) (citing 20 C.F.R. § 404.1560(b)(1997)).  Thus, a decision that a claimant can return to her past work must be supported by factual findings concerning the claimant's RFC and the physical and mental demands of the claimant's previous work.  Santiago v. Secretary of Health & Human Servs., 944 F.2d 1, 5 n.1 (1st Cir. 1991).

The step four burden is on the claimant, and to meet it she

is required to make "some reasonable threshold showing that she cannot return to her former employment because of her alleged disability." Santiago, 944 F.2d at 5 (citations omitted); see also Gray v. Heckler, 760 F.2d 369, 371-72 (1st Cir. 1985). Here, then, Loftus must produce evidence of the physical and mental demands of her prior work and describe her limitations, indicating how her current functional capacity precludes her from performing her prior job. See Santiago, 944 F.2d at 5. The ALJ may rely on the claimant's own descriptions of her duties and her functional limitations. Id. If the claimant can still perform her past work as she actually performed it when employed, she is not disabled. Id.

Here, the ALJ concluded that Loftus could return to her past work as a head teller. The ALJ noted that Loftus "has reported that her job as a bank teller supervisor involved use of coin and adding machines, and supervising, managing and reviewing up to ten to 14 (sic) other employees, as well as filling in as a teller when necessary. She has stated she also prepared schedules, wrote memorandum, directed meetings and was responsible for operation of the vault." The ALJ determined that such testimony was consistent with the duties of a head teller as it appears in the Department of Labor's Dictionary of

16

Occupational Titles.[4]  A head teller is a light duty job.  Taking

this information into consideration as well as Loftus's

testimony, and the evidence of record, the ALJ found that Loftus

had the RFC to perform light work.[5]  The ALJ conceded that if he

were to accept the claimant's testimony as credible, Loftus would

likely be deemed disabled under the Act.  However, the ALJ

concluded that her subjective complaints of pain were not

credible.  Likewise, the ALJ discounted the persuasiveness of Dr.

Lynch's and Dr. Karagiannis's medical opinions.  Substantial

evidence in the record, therefore, confirms the ALJ's conclusion

---

[4]  The ALJ, and the Commissioner, can take administrative notice of the accuracy of several sources of job information, including the Dictionary of Occupational Titles.  See 20 C.F.R. § 404.1566(d)(1997).  Therefore, he was entitled to consider Loftus's work experience not only as she performed it but by how it is performed in the national economy.  See Santiago, 944 F.2d at 5 & n.1; see also SSR 82-61, 1982 WL 31387 at *2 (explaining that determination of past relevant work can be "[w]hether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy."); SSR 82-62, 1982 WL 31386 at *3.

[5]  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  20 C.F.R. § 404.1567 (1997).  The RFC assessments completed by DDS support the ALJ's conclusion that Loftus is capable of light work.

17

that Loftus was not disabled at step four under the Social
Security Act.

## IV.  CONCLUSION

For the foregoing reasons, Loftus's motion to reverse and
remand the Secretary's decision (document no. 6) is denied and
the Secretary's motion to affirm (document no. 8) is granted.[6]

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

August 20, 1997

cc:  David L. Broderick, Esq.
     Elizabeth R. Jones, Esq.

_____

[6]  Because I find substantial evidence in the record supporting
the ALJ's determination that Loftus was not disabled at step four
of the sequential analysis, I need not address Loftus's final
argument that the commissioner did not carry her burden at step
five to demonstrate that Loftus could engage in alternative
employment and that such employment exists.