Smith v. SSA                              CV-02-081-M    03/12/03
                      UNITED STATES DISTRICT COURT

                        DISTRICT OF NEW HAMPSHIRE


Frederick Smith, Jr.,
      Claimant

      v.                                  Civil No. 02-081-M
                                          Opinion No. 2003 DNH 037
Jo Anne B. Barnhart, Commissioner,
Social Security Administration,
      Respondent


                            **O R D E R**


      Pursuant to 42 U.S.C. § 405(g), claimant, Frederick Smith,

Jr., moves to reverse the Commissioner's decision denying his

applications for Social Security Disability Insurance Benefits

and Supplemental Security Income Payments under Titles II and

XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 423,

1382 (the "Act").  Respondent objects and moves for an order

affirming her decision.


      For the reasons set forth below, the matter is remanded to

the Administrative Law Judge ("ALJ") for further proceedings

consistent with this opinion.

**Factual Background**

I.    Procedural History.

In June of 2000, claimant filed applications for disability insurance benefits and supplemental security income payments under Titles II and XVI of the Act, alleging that he had been unable to work since May 11, 2000. The Social Security Administration denied his application. Claimant then requested a hearing before an ALJ.

On October 30, 2001, claimant, his non-attorney representative, and a vocational expert appeared before an ALJ who considered his claims de novo. The ALJ issued his order on December 17, 2001, concluding that, although claimant was incapable of returning to his prior work (at the "medium" exertional level), he had the residual functional capacity to perform the full range of sedentary work. Accordingly, the ALJ determined that claimant was not disabled within the meaning of the Act.

In response, claimant filed this timely appeal, asserting that the ALJ's decision was not supported by substantial evidence

2

and seeking a judicial determination that he is disabled within the meaning of the Act.[1]  Claimant then filed a "Motion for Order Reversing the Decision of the Commissioner" (document no. 5). The Commissioner objected and filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 6).  Those motions are pending.

II.  Stipulated Facts.

Pursuant to Local Rule 9.1(d), the parties have submitted a comprehensive statement of stipulated facts which, because it is part of the court's record (document no. 7), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.

---

[1]     Ordinarily, claimant's failure to seek review by the Appeals Council before initiating this proceeding would constitute a failure to exhaust available administrative remedies and the court would lack subject matter jurisdiction over his claims.  See, e.g., Sims v. Apfel, 530 U.S. 103, 107 (2000); 20 C.F.R. §§ 404.900 and 416.1400.  However, claimant was selected for a pilot program under which the Social Security Administration is, in "randomly selected cases," testing the "elimination of the request for review by the Appeals Council." 20 C.F.R. §§ 404.966 and 416.1466.  For claimants participating in the program, an ALJ's adverse disability determination under either Title II or Title XVI of the Act can be appealed directly to federal district court, bypassing the need to seek intermediate review by the Appeals Council.  20 C.F.R. §§ 404.966 and 416.1466.

**Standard of Review**

I.   Properly Supported Factual Findings by the ALJ
     are Entitled to Deference.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings of the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3); Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991).[2] Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the adverse position. See Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different

_____

[2]   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).

4

conclusion, so long as it is supported by substantial evidence."). See also Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (The court "must consider both evidence that supports and evidence that detracts from the [Commissioner's] decision, but [the court] may not reverse merely because substantial evidence exists for the opposite decision."); Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (The court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. See Burgos Lopez v. Secretary of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984) (citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)). It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts." Irlanda Ortiz, 955 F.2d at 769. Accordingly, the court will give deference to the ALJ's credibility determinations, particularly when they are supported by specific findings. See Frustaglia v. Secretary of Health &

Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health & Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

II.  The Parties' Respective Burdens.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1)(A).  See also 42 U.S.C. § 1382c(a)(3).  The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment.  See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove that his impairment prevents him from performing his former type of work.  See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 7 (1st Cir. 1982)).  Nevertheless, the claimant is not required to establish a doubt-

free claim. The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence." See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective assertions of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience. See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6. Provided the claimant has shown an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform. See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982). If the Commissioner shows the existence of other jobs that the claimant can perform, then the overall burden to demonstrate disability remains with the claimant. See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

7

When determining whether a claimant is disabled, the ALJ is required to make the following five inquiries:

(1)    whether the claimant is engaged in substantial gainful activity;

(2)    whether the claimant has a severe impairment;

(3)    whether the impairment meets or equals a listed impairment;

(4)    whether the impairment prevents the claimant from performing past relevant work; and

(5)    whether the impairment prevents the claimant from doing any other work.

20 C.F.R. § 404.1520.  See also 20 C.F.R. § 416.920.  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm the determination that claimant is not disabled.

**Discussion**

I.   Background - The ALJ's Findings.

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920.  Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since May 11, 2000 (his alleged onset of disability).  Next, as to claimant's alleged heart disorder, depression, and mild hearing loss, the ALJ concluded that the medical evidence of record indicates that none amounts to a severe impairment.  Transcript at 10.  The ALJ did, however, conclude that claimant has "the medically determinable severe impairment of degenerative joint disease in his knees."  Id.

Next, the ALJ assessed claimant's residual functional capacity ("RFC") and concluded that claimant's testimony

9

concerning the level and persistence of his pain was inconsistent with the objective medical evidence and, therefore, not entirely credible. Transcript at 11-12. Ultimately, the ALJ concluded that claimant retains the RFC to "lift 10 pounds occasionally and 5 pounds frequently, to stand and walk for at least 2 hours out of an 8 hour workday, and to sit for 6 hours out of an 8 hour workday, with normal breaks," transcript at 12 - a finding consistent with "Functional Capacity Assessment" prepared by non-examining physician Dr. Nault (transcript at 170-79).[3]

In light of his assessment of claimant's RFC, the ALJ determinated that claimant was capable of performing the full range of "sedentary" work. Transcript at 12. And, while claimant's impairment prevents him from returning to his past relevant work, the ALJ concluded that he could make an adjustment to unskilled sedentary work that exists in significant numbers in the national economy. Id. at 14. In light of those conclusions,

---

[3] Another non-examining physician, Dr. Schneider, reviewed claimant's medical records and, in completing a "Psychiatric Review Technique" concluded that, while claimant did suffer from "adjustment disorder with depressed mood," he did not suffer from any medically determinable psychiatric impairment. Transcript at 180-84.

the ALJ determined that claimant was not disabled within the meaning of the Act.  <u>Id.</u>

In support of his motion to reverse the decision of the Commissioner, claimant advances three arguments: first, he says the ALJ failed to ascribe sufficient weight to his subjective complaints of pain; next, he says the ALJ erred in concluding that his depression and hearing loss are not severe; and, finally, he claims the ALJ erred in failing to adequately consider additional medical evidence submitted after the hearing, but within the period of time that the ALJ had agreed to leave the record open.

II.  <u>The ALJ's Decision to Discount Claimant's Testimony</u>.

No one appears to doubt that claimant is impaired and suffers from pain.  The relevant inquiry is, of course, whether that pain is of a degree that renders him disabled within the meaning of the Act.

When determining a claimant's RFC, the ALJ must review the medical evidence regarding the claimant's physical limitations as

well as his own description of those physical limitations, including his subjective complaints of pain. See Manso-Pizarro v. Secretary of Health & Human Services, 76 F.3d 15, 17 (1st Cir. 1996). When, as here, the claimant has demonstrated that he suffers from an impairment that could reasonably be expected to produce the pain or side effects he alleges, the ALJ must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent, if any, to which they limit his ability to do basic work activities.

> [W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by the treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual . . ..
>
> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements.

12

Social Security Ruling ("SSR") 96-7p, Policy Interpretation

Ruling Titles II and XVI: Evaluation of Symptoms in Disability

Claims: Assessing the Credibility of an Individual's Statements,

1996 WL 374186 (July 2, 1996). Those factors include the

claimant's daily activities; the location, duration, frequency,

and intensity of the claimant's pain or other symptoms; factors

that precipitate and aggravate the symptoms; the type dosage,

effectiveness, and side effects of any medication the claimant

takes (or has taken) to alleviate pain or other symptoms; and any

measures other than medication that the claimant receives (or has

received) for relief of pain or other symptoms. Id. See also

Avery, 797 F.2d at 23; 20 C.F.R. § 404.1529(c)(3).

It is, however, the ALJ's role to assess the credibility of

claimant's asserted inability to work in light of the medical

record, to weigh the findings and opinions of both "treating

sources" and other doctors who have examined him and/or reviewed

his medical records, and to consider the other relevant factors

identified by the regulations and applicable case law. Part of

his credibility determination necessarily involves an assessment

of the claimant's demeanor, appearance, and general

"believability." Accordingly, if properly supported, the ALJ's credibility determination is entitled to substantial deference from this court. See, e.g., Irlanda Ortiz, 955 F.2d at 769 (holding that it is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts").

Here, in reaching the conclusion that claimant's testimony concerning the disabling nature of his impairments was not entirely credible, the ALJ considered, among other things, claimant's extensive medical history and progress reports from his treating physicians; the fact that claimant's "treatment history is marked by discontinuation of both physical therapy and psychiatric counseling due to non-compliance and failure to keep appointments," transcript at 12; claimant's positive response to medications, most notably Vioxx; and his activities of daily living. Ultimately, the ALJ concluded that "the level and persistence of pain alleged is inconsistent with the objective medical evidence, the claimant's treatment history, and his activities of daily living." Id.

14

While the record suggests that this is certainly a close case, in light of the foregoing, the court cannot conclude that the ALJ erred in making his assessment of claimant's credibility. To be sure, there is evidence in the record that is supportive of claimant's assertion that his pain renders him totally disabled. Importantly, however, there is also substantial evidence in the record to support the ALJ's conclusion that claimant's pain does not render him totally disabled. In such circumstances - when substantial evidence can be marshaled from the record to support either the claimant's position or the Commissioner's decision - this court is obligated to affirm the Commissioner's finding. See Tsarelka, 842 F.2d at 535 ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."). See also Gwathney, 104 F.3d at 1045; Andrews, 53 F.3d at 1039-40.

III. Claimant's Hearing Loss and Depression.

In addressing claimant's hearing loss, the ALJ acknowledged that the medical evidence of record supports the conclusion that claimant "has mild to moderate bilateral sensory-neuro hearing

15

loss." Transcript at 10. He also noted, however, that the testing performed on claimant was inconsistent and the record contained no documentation of claimant having sought any further treatment or examination for hearing loss. Id. Based upon the sparse evidence of record to support claimant's assertion that his hearing impairment is "severe," the court cannot conclude that the ALJ's decision in that regard was erroneous. As noted above, it is the claimant who bears the burden of establishing a severe impairment and, in this case, the record simply fails to adequately support that claim. See Bowen, 482 U.S. at 146-47; Santiago, 944 F.2d at 5.

As to claimant's depression, the ALJ noted that he had undergone a psychological evaluation in December of 2000, which revealed that claimant suffered from an "adjustment disorder with depression features." Transcript at 10. But, the ALJ also noted that claimant's treatment at the Mental Health Center of Greater Manchester was terminated due to his failure to keep scheduled appointments. Additionally, in concluding that claimant's depression was not "severe" within the meaning of the Act, the ALJ observed that claimant "displayed significant improvement

16

with the use of Welbutrin," id., and noted that "[b]ased upon the paucity of documentation, including a lack of allegations of functional limitations due to depression, and the claimant's significant improvement with medication, the state medical examiner found that he had no functional limitations resulting from adjustment disorder." Id. Consequently, the ALJ concluded that, "any mental disorder produces no more than a minimal effect upon the claimant's ability to perform basic work activities and is therefore not severe." Id.

As with the ALJ's findings regarding claimant's hearing loss, the court concludes that his findings with regard to claimant's depression are adequately supported by the record: claimant has failed to point to sufficient evidence in the record to satisfy his burden of proof - that his mental disorder constitutes a severe impairment.

IV. Additional Medical Opinion Evidence.

Finally, claimant asserts that the ALJ failed to properly consider (or at least discuss) his treating physician's opinion concerning his non-exertional limitations (and, to a lesser

extent, his exertional limitations).[4] On that point, the court
agrees.

Approximately two weeks after claimant appeared before the
ALJ (and while the record was still open), Dr. Lavallee completed
a "Medical Assessment of Ability to Do Work-Related Activities
(Physical)."  In that report, Dr. Lavallee opined, among other
things, that claimant's ability to push/pull was "severely
limited" by his impaired knees.  Transcript at 253.  He also
opined that claimant could not stand for more that 15 minutes
without interruption - an exertional limitation which, if
credited as true, would have an obvious negative impact on
claimant's occupational base.  See, e.g., SSR 83-12, 1983 WL
31253 at * 4 (1983).

---

[4]    Exertional limitations deal with an individual's
inability to perform one or more of the following seven
activities: sitting, standing, walking, lifting, carrying,
pushing, and pulling.  SSR 96-8p, 1996 WL 374184 at * 5 (July 2,
1996).  Non-exertional limitations, on the other hand, are
limitations that affect an individual's ability to perform
activities that are postural (e.g., stooping and climbing),
manipulative (e.g., reaching and handling), visual,
communicative, and mental.  Non-exertional limitations also
include an individual's inability to tolerate various
environmental factors, such as chemical fumes, dust, temperature,
humidity, etc.  Id. at * 6.

Additionally, Dr. Lavallee opined that claimant suffered from several non-exertional limitations that affected his ability to climb ("barely"), balance ("occasionally"), stoop ("rarely"), crouch ("rarely"), kneel ("rarely"), and crawl ("never"). Transcript at 235. Finally, Dr. Lavallee opined that claimant's impairment caused several environmental restrictions that precluded him from working at heights, near moving machinery, in cold temperatures, and in environments that would expose him to noise, fumes, humidity, or vibration. Id. at 236. Unfortunately, Dr. Lavallee's opinions were not submitted to the ALJ until after the hearing, thereby precluding the ALJ from incorporating those limitations (to the extent he credited them) into a hypothetical question or questions posed to the vocational expert.[5] Those opinions were, however, available to the ALJ before he rendered his final decision.

---

[5] In response to questioning from the ALJ, the vocational expert did testify that a claimant's need to alternate between sitting and standing at 30 minute intervals would erode the pertinent occupational base, as would a claimant's lack of a high degree of hearing acuity. The ALJ did not, however, pose any hypothetical questions involving a claimant who is "severely restricted" in his ability to push/pull, or who suffers from the environmental limitations identified by Dr. Lavallee, or who could only stand or walk for 15 minutes without interruption.

19

In discussing the weight that will be ascribed to the opinions of "treating sources," the pertinent regulations provide:

> Generally, we give more weight to opinions from [the claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairments(s) . . . When we do not give the treating source's opinion controlling weight, we apply the factors listed [in this section] in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2). See also SSR 96-2p, Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188 (July 2, 1996) (when the ALJ renders an adverse disability decision, his or her notice of decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight.").

Here, in concluding that claimant could perform the full range of sedentary work, the ALJ did not account for several of the limitations from which Dr. Lavallee believes claimant suffers and failed to adequately explain the basis for his (implicit) decision not to give controlling weight to those medical opinions. Among those (alleged) limitations are claimant's "severely restricted" ability to push/pull, the environmental limitations, and, perhaps most significantly, the inability to stand or walk for more than 15 minutes without interruption.

If the ALJ chooses to accept Dr. Lavallee's opinions as to claimant's limitations, he should obviously discuss those limitations when considering whether claimant is capable of performing the full (or a limited) range of sedentary work. Of course, the ALJ is entitled to reject Dr. Lavallee's opinions or accept them only in part. If he does so, however, he should discuss the reasons for ascribing less than "controlling weight" to those opinions. See 20 C.F.R. § 404.1527(d). See also SSR 96-2p, 1996 WL 374188.

21

## Conclusion

Having carefully reviewed the administrative record and the arguments advanced by both the Commissioner and claimant, the court concludes that there is substantial evidence in the record to support both the ALJ's credibility determination and his conclusion that neither claimant's hearing loss nor his depression are "severe," as that term is used in the Act. Importantly, however, because the ALJ's decision fails to adequately address the specific exertional and non-exertional limitations identified by claimant's treating physician (or explain why the physician's opinions were not given controlling weight), the case must be remanded to the ALJ for further consideration and, if he deems necessary, the taking of additional evidence and/or a further hearing.

Accordingly, claimant's motion to reverse the decision of the Commissioner (document no. 5) is granted in part and denied in part. To the extent it seeks reversal of the Commissioner's decision denying his application for benefits, that motion is denied. To the extent it seeks remand to the ALJ for further

consideration, however, it is granted.  The Commissioner's motion

for an order affirming his decision (document no. 6) is denied.


Pursuant to sentence four of 42 U.S.C. § 405(g), this matter

is remanded to the ALJ for further proceedings.  The Clerk of the

Court shall enter judgment in accordance with this order and

close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 12, 2003

cc:  Heather E. Schulze, Esq.
     David L. Broderick, Esq.

23