George Barrett v. SSA                    CV-01-371-B    03/28/03

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>George Barrett</u>

   v.                                 Civil No. 01-371-B
                                        Opinion No. 2003 DNH 055
<u>Jo Anne B. Barnhart</u>

<u>**MEMORANDUM AND ORDER**</u>

On April 3, 2000, George Barrett filed an application with the Social Security Administration ("SSA") for Title II disability insurance benefits ("DIB"). The SSA initially denied his application. Barrett elected to bypass reconsideration of this initial decision and requested a hearing. Administrative law judge ("ALJ"), Frederick Harap, held a hearing, and on February 20, 2001, determined that Barrett was not disabled. Barrett appealed, but on July 27, 2001, the Appeals Council denied his request for review.

Barrett brings this action pursuant to 42 U.S.C. § 405(g) (1991 & Supp. 2002), seeking review of the denial of his

application for DIB.  Barrett argues that: (1) the ALJ failed to follow procedural requirements when evaluating Barrett's mental impairment; (2) the ALJ's decision regarding Barrett's RFC is unsupported by substantial evidence; and (3) the ALJ's finding that the claimant lacked credibility is unsupported by substantial evidence.

## I.  BACKGROUND

### A.  Barrett's Education and Work History

Barrett was 58 years old when he filed his application for DIB on April 3, 2000.  He has an eighth grade education, but is functionally illiterate.  Barrett's work experience includes assembly work in the shoemaking industry, general labor, and janitorial work.  He left his last position as a janitor in 1989, when he contends he became disabled and could no longer work.[1]  Since 1989, Barrett has worked as much as twenty hours per week as a packer and assembler in a sheltered work setting.  This work does not constitute substantial gainful activity.  See 20 C.F.R. 404.1571 et seq. (2002).

_____

[1]  At the ALJ hearing, Barrett requested that his onset date of disability be changed to December 31, 1994.

**B.** **Medical Evidence**

Barrett's medical history begins in 1962, when he was transferred from jail to the New Hampshire State Hospital on a "regular order of commitment." Record at 83. State Hospital records indicate that Barrett's I.Q. score was 83, which classified him as mildly mentally deficient. Eventually, Barrett was granted "full ground privileges" at the State Hospital, secured employment at a local mill, and was discharged on June 9, 1967. There is nothing in the record regarding Barrett's medical history from 1967 to 1999.

On July 6, 1999, Barrett sought medical treatment at Catholic Medical Center for nervousness and a hissing sound in his right ear. His ear was occluded with ear wax and was irrigated. Although the primary treatment related to his ear, Barrett was proscribed Ativan for his nervousness.[2]

On July 20, 1999, Barrett began treatment at the Manchester Community Health Center. Again, his primary complaint was hissing in his ear, but he also reported problems with anxiety.

---

[2] Ativan is an anti-anxiety agent. Physician's Desk Reference at 3348 (53rd ed. 2001).

-3-

Barrett was continued on anti-anxiety medication. However, on his second visit to the Center, Dr. Gavin Muir noted that Barrett lacked an underlying diagnosis regarding his anxiety. He referred Barrett to Manchester Mental Health. Barrett was examined by Dr. Larry Politz at Manchester Mental Health. Dr. Politz assessed him as having "some sort of underlying anxiety disorder." Record at 133. Dr. Muir continued treating Barrett with Ativan, and noted that if he developed further problems, long term care at the Center would be appropriate.

Muir again referred Barrett to Manchester Mental Health, and on May 1, 2000, a report regarding Barrett's condition was completed by Dr. Daniel Potenza and Debra Grages, R.N. The report indicated that Barrett did not suffer from any overt psychosis, but that he displayed below normal to normal intelligence. Barrett reported that people made him anxious and that his depression interfered with his ability to work. Barrett indicated that these symptoms had worsened over time. However, Barrett also stated that he had good relationships with his wife and children, had lots of friends, and generally got along well with others. The report ruled out anxiety disorder as a cause of Barrett's reported symptoms of anxiety and depression.

The report also noted that although Barrett was "trying to make a case around his anxiety and depression that would disable him for Social Security Benefits," the report ultimately ruled out malingering. Record at 154. In conclusion, the report diagnosed Barrett as suffering from "Personality Disorder with Antisocial Traits." Record at 157. It also stated that it was "unclear" to what extent Barrett's functioning was impaired in regard to his reported symptoms of anxiety and depression. Record at 158. These self-reported symptoms, the report said, "will need careful evaluation." Id.

Upon the request of his attorney, Barrett underwent a psychological examination by Dr. Brian Rines. Dr. Rines's report, dated December 12, 2000, concluded that Barrett had the mental functioning of a twelve year old and was functionally illiterate. Dr. Rines suggested that Barrett would find it nearly impossible to follow simple verbal instructions, think abstractly, or shift cognitive routines. Dr. Rines opined that Barrett would most likely put off or threaten others with his actions, given his lack of judgment and insight. In conclusion, Dr. Rines diagnosed Barrett as suffering from anxiety disorder with social phobia, personality change associated with his

-5-

youthful head injury, mixed personality disorder with narcissistic, histrionic, and schizotypal features. Record at 166. According to Dr. Rines, Barrett was incapable of substantial gainful activity beyond that of sheltered workshops.

## C. **PRTF and RFC Assessment By Disability Determination Services**

On April 20, 2000, Dr. Craig Stenslie of the Disability Determination Services ("DDS") completed a psychiatric review technique form ("PRTF") for Barrett pursuant to 20 C.F.R. § 1520a (2002). Dr. Stenslie reviewed Dr. Muir's clinical notes and concluded that there was "insufficient [medical evidence] of any determinable impairment - physical or mental." Record at 136, 137. This report was generated before Barrett was evaluated and diagnosed with personality disorder by both Manchester Mental Health and Dr. Rines.

On April 27, 2000, SSA medical consultant Joan Turnell completed a residual functional capacity assessment ("RFC") for Barrett. The RFC stated that no primary diagnosis had been established and that "there is insufficient medical evidence of any impairment which would have prevented full-time work activity by claimant." Record at 152. Again, this report was generated before Barrett's diagnosis from Manchester Mental Health and Dr.

-6-

Rines.

## D. ALJ's Decision

The ALJ applied the five-step sequential evaluation process under which disability applications are reviewed. See 20 C.F.R. § 404.1520 (2002). The ALJ found that Barrett carried his burden sufficiently at each of the first three steps in the process. At step four, however, the ALJ found that Barrett was not disabled because he retained the residual functioning capacity to return to the type of work he had performed in the past.

Specifically, the ALJ found that Barrett had "borderline intellectual functioning and anxiety disorder, impairments which are severe but which do not meet or equal the criteria of any of the impairments listed in [the regulations]." Record at 18. The ALJ noted that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." Record at 15. Accordingly, the ALJ did not complete a PRTF. The ALJ made no mention of Dr. Potenza's or Dr. Rine's diagnosis of personality disorder. The ALJ also discredited Barrett's subjective reports of anxiety and depression and their effect upon his ability to work. He found these self-reports "not entirely credible" in light of Barrett's

description of his activities and lifestyle, and Dr. Potenza's report, which indicated that Barrett was manipulative.

The ALJ found that Barrett's "borderline intellectual functioning" did not prevent him from maintaining a thirty-year marriage and fostering good relationships with his children and grandchildren. Record at 17. Furthermore, the ALJ found that Barrett's work history indicated an ability to perform simple labor jobs and that there was "no indication in the file of a worsening of his condition which would preclude him from returning to any of his past work." Id. Because Barrett's mental deficiencies did not hinder his ability to carry out past work activities, the ALJ concluded that Barrett was able to return to the type of work he had performed in the past on the date his insured status expired.

## II. STANDARD OF REVIEW

After a final determination by the Commissioner denying a claimant's application for benefits and upon a timely request by the claimant, I am authorized to review the pleadings submitted by the parties and the transcript of the administrative record and enter a judgment affirming, modifying, or reversing the

Commissioner's decision. See 42 U.S.C. § 405(g). The court's review is limited in scope, however, as the Commissioner's factual findings are conclusive only if they are supported by substantial evidence. See id.; Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner is responsible for settling credibility issues, drawing inferences from the record evidence, and resolving conflicting evidence. See Irlanda Ortiz, 955 F.2d at 769; Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); see also Tsarelka v. Sec'y of Health & Human Servs., 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [C]ommissioner's conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.") (citations omitted). Therefore, the court must "'uphold the [Commissioner's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion.'" Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

While the ALJ's findings of fact are conclusive when supported by substantial evidence, they "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Charter, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citations omitted). If the Commissioner has misapplied the law or has failed to provide a fair hearing, however, deference to the Commissioner's decision is not appropriate, and remand for further development of the record may be necessary. See Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 644 (2d Cir. 1983); see also Slessinger v. Sec'y of Health & Human Servs., 835 F.2d 937, 939 (1st Cir. 1987) ("The [Commissioner's] conclusions of law are reviewable by this court.") I apply these standards in reviewing the issues Barrett raises on appeal.

## III. DISCUSSION

Under the Social Security Act (the "Act"), an individual seeking DIB is "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A) (1991 & Supp. 2002). The Act instructs the ALJ to apply a five-step sequential analysis to determine whether a claimant is disabled.[3]

At step four, the ALJ must determine whether the claimant's impairment prevents him from performing his past work. See 20 C.F.R § 404.1520(e) (2002). In making this determination, the ALJ must assess both the claimant's RFC, that is, what the claimant can do despite his impairments, and the demands of the claimant's prior employment. See id.; 20 C.F.R. § 404.1545(a) (2002); see also Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 7 (1st Cir. 1991) (per curiam). At this step, the claimant bears the burden of showing that he does not have the RFC to perform his former type of work. See Santiago, 944 F.2d at 5.

At step five, the burden shifts to the Commissioner to show "that there are jobs in the national economy that [the] claimant

---

[3] The five-step sequential analysis requires the ALJ to determine: (1) whether the claimant is presently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. See 20 C.F.R. § 404.1520 (2002).

can perform." Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991)(per curiam). The Commissioner must show that the claimant's limitations do not prevent him from engaging in substantial gainful work, but need not show that the claimant could actually find a job. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 276 (1st Cir. 1988).

In this case, the ALJ concluded at step four of the sequential evaluation process that Barrett was able to perform his past relevant work prior to his date last insured. Barrett argues that the decision must be reversed and remanded because it is tainted by error. First, Barrett argues that the ALJ violated 42 U.S.C. § 421(h) (2002) by failing to ensure that "every reasonable effort" was undertaken to obtain a review by a qualified psychiatrist or psychologist of his alleged mental impairments. Barrett contends that the ALJ failed to complete a PRTF, as mandated by 20 C.F.R. § 404.1520a (2002), and failed to request a consultative examination, see 20 C.F.R. §§ 404.1512(f) (2002); 404.1517 (2002), or otherwise ensure that an adequate record was developed. Second, Barrett argues that because of these procedural errors and the ALJ's failure to give proper weight to Dr. Rines's report, the ALJ's decision is not supported

-12-

by substantial evidence.  Lastly, Barrett contends that the ALJ failed to adhere to the requirements of SSR 96-7p when assessing his credibility.  I agree with Barrett's first argument and remand the case on this basis.

The claimant is responsible for providing specific medical evidence of his alleged mental impairment and its effect upon his functional capacity for work.  See 20 C.F.R. § 404.1512(a)(2002); Gray v. Heckler, 760 F2d 369, 375 (1st Cir. 1985).  However, the ALJ is responsible for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised."  Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(quotation omitted).  Where it is within the power of the ALJ "without undue effort," he must fill in an undeveloped record "where there are gaps in the evidence necessary to a reasoned evaluation of the claim."  Heggarty, 947 F.2d at 997 (quotation omitted).

Barrett correctly notes that an ALJ must complete a PRTF when the Commissioner determines that the claimant suffers from a mental impairment which falls under those listed in 20 C.F.R. Pt. 404, Subpt. P, App.1, Pt. A ("Part A").  This requirement does not apply to mental impairments which do not fall within Part A.

See 20 C.F.R. § 404.1520a(b) ("If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in [a PRTF].") (emphasis added). When a claimant's mental impairment does not meet or equal the criteria of the listings, but is nevertheless significant, the ALJ is still required to evaluate the claimant's mental RFC. See Part A at § 12(A).

About two weeks after Barrett filed his application for DIB, a PRTF was completed by Dr. Stenslie of DDS. Dr. Stenslie concluded that there was insufficient medical evidence of any impairment which would preclude Barrett from work activity. However, this PRTF was completed prior to Barrett's evaluation and subsequent personality disorder diagnosis at Manchester Mental Health. An RFC completed by a DDS medical consultant prior to Dr. Potenza's diagnosis echoed the conclusions found in the PRTF.

Although the ALJ had before him the PRTF, RFC, and Dr. Potenza's report, the ALJ concluded that "[t]he claimant has no impairment which meets the criteria of any of the listed impairments described in Appendix 1 of the Regulations (20 C.F.R.

-14-

Part 404, Subpart P, Appendix 1).  <u>No treating or examining</u> <u>physician has mentioned findings equivalent in severity to the</u> <u>criteria of any listed impairment</u>."  Record at 15, 18 (emphasis added).  This finding is flatly contradicted by Dr. Potenza's diagnosis that Barrett suffered from personality disorder.  Dr. Potenza's report unequivocally diagnosed Barrett as suffering from personality disorder, an impairment expressly listed under Part A of the regulations.  <u>See</u> Part A at § 12.08.  Furthermore, the ALJ relied upon Dr. Potenza's report when he assessed Barrett's mental impairments and RFC.  Indeed, the ALJ chose to give controlling weight to the report over Dr. Rines' subsequent examination and evaluation of Barrett.  Therefore, the ALJ's determination that Barrett's illness did not fall within the listed impairments of the regulations is internally inconsistent with his adoption of Dr. Potenza's report.  I also note that the ALJ's decision fails to recognize Dr. Potenza's diagnosis of personality disorder and, instead, focuses solely upon Barrett's mental deficiency and anxiety.  Thus, the ALJ's decision is further flawed because it simply overlooks the personality disorder and whether it necessitated a PRTF.

The Commissioner argues that Dr. Stenslie's PRTF indicates that Barrett did not suffer from a medically determinable impairment. Thus, either the ALJ's obligation to perform a PRTF was satisfied by Dr. Stenslie's completion of the form or, presumably, no PRTF was necessary because Barrett's alleged illness was not listed in Part A. I reject these arguments. Dr. Stenslie's PRTF did not relieve the ALJ of his duty to complete a PRTF and to otherwise ensure that an adequate record was developed "where there [were] gaps in the evidence necessary to a reasoned evaluation of the claim." Heggarty, 947 F.2d at 997 (citations omitted). Here, the record is devoid of any PRTF regarding the severity of Barrett's diagnosed personality disorder. As it stands, the ALJ's decision gives controlling weight to Dr. Potenza's report, yet it makes no mention of Barrett's personality disorder.

Accordingly, the ALJ was obligated to complete a PRTF and assess the severity of Barrett's personality disorder. See 20 C.F.R. § 404.1520a; Part A at § 12.08(A) and (B). His failure to do so and to attach the PRTF to his decision warrants remand to the SSA. See Gutierrez v. Apfel, 199 F.3d 1048, 1051 (9th Cir. 2000); Plummer v. Apfel, 186 F.3d 422, 434 (3rd Cir. 1999);

-16-

<u>Stambaugh v. Sullivan</u>, 929 F.2d 292, 296 (7th Cir. 1991).
Furthermore, the ALJ failed to take all reasonable efforts to
ensure that an adequate record was developed regarding Barrett's
personality disorder.


### IV.   <u>CONCLUSION</u>

When a court finds that the administrative record is
incomplete, a court should vacate the Commissioner's decision and
remand the matter for further proceedings consistent with the
reasoning in its opinion.  <u>See</u> 42 U.S.C. § 405(g); <u>Seavey v.
Barnhart</u> 276 F.3d 1, 10-11 (1st Cir. 2001).  Accordingly, I
vacate the judgment denying Barrett benefits, pursuant to
sentence four of 42 U.S.C. § 402(g), and remand this matter to
the Commissioner for further proceedings consistent with this
Memorandum and Order.  The Commissioner should take all
reasonable efforts to ensure that an adequate record is generated
regarding the severity of Barrett's personality disorder, and
whether and to what extent this alleged mental disorder impaired
his ability to function.

I grant Barrett's motion for an order remanding the decision
of the Commissioner (Doc No. 11), and deny the defendant's motion

for order affirming the decision of the Commissioner (Doc. No. 13).

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

March 28, 2003

cc:    Francis Jackson, Esq.
       Dennis Bezanson, Esq.
       David Broderick, Esq.